## DAVIS v. DAVIS.

1. Attachments for contempt are either civil or criminal, or both.

   (a) In the former, the attachment, being remedial, is merely to compel obedience to an order requiring the payment of money, or to do some act for the benefit of a party litigant, and where the party ordered fails to comply, not out of disrespect to the court, but for other causes within or without his control.

   (b) In the latter, the attachment is for disrespectful or contumacious conduct towards the court, and is punitive.

   (c) Where a husband was ordered by the court to pay a certain amount to his wife as temporary alimony, and he failed to pay the amount, and on a rule nisi to show cause why he should not be attached for contempt his answer tended to show that the failure to pay was caused not by disrespect to the court, but solely because he could neither borrow the money, mortgage, nor sell enough of his property to raise the amount, although he had endeavored to do so, and had requested the wife's attorney to cause the sheriff to levy on a sufficiency of his property to make the amount ordered to be paid, which was done, and the sum so paid was more than sufficient to pay the present demands, and also for several future payments, and this was done before the rule was made absolute: *Held,* that the court erred in ordering the respondent to jail for an indefinite period for contempt.

   (d) It is error for the court to order a certain sum to be paid by a respondent for temporary alimony and other sums to be paid at future intervals, and to provide that if the future payments are not made at the times specified, then the sheriff shall remand the respondent to jail until the same are paid, no provision being made in the order for a hearing from the respondent before being adjudged in contempt and committed to jail.

2. Where in answer to a rule nisi a husband, who had failed to pay temporary alimony as ordered, alleged that he intended no contempt of the court and that he had not paid the alimony for reasons beyond his control, and requested, among other things, that the amount of temporary alimony ordered paid in future be reduced; and where it appears from the judge's order that he said nothing about the application for reduction of alimony: *Held,* that the judge erred in holding the respondent in contempt, and in ordering him to be sent to jail for an indefinite imprisonment, such order to be subject to enforcement by the sheriff if the respondent did not make prompt payments in the future. *Held,* further, that the judge will not be directed to reduce the amount of alimony, where it appears that the application for its reduction was merely incidental to and embodied as a part of the contempt proceedings, and no evidence was introduced showing that such reduction should be granted.

   (a) In such a case the defendant can, if he so desires, file an application to have the order granting temporary alimony modified.

3. From a judgment in a case of attachment for contempt a writ of error may be brought to the Supreme Court in the same manner as in injunction cases; and where the judge upon the hearing adjudged the

defendant in contempt and directed that he be imprisoned therefor, an assignment of error is sufficiently definite when set out as follows: "to which order in adjudging plaintiff in error to be in contempt of court, and in refusing to modify and reduce the amount of alimony, the plaintiff in error then and there excepted, and now excepts, and assigns the same as error, and says that the court erred in adjudging the plaintiff for being in contempt, and erred in refusing to reduce said judgment for alimony."

APRIL 9, 1912.

Rule for contempt. Before Judge Rawlings. Screven superior court. September 9, 1911.

Mrs. Lecie Davis filed her petition for divorce against her husband, J. A. Davis, on the ground of cruel treatment, and applied for temporary alimony for herself and their minor daughter, who lacked only a few weeks of being 21 years of age. The hearing was before the judge on the sworn petition and answer and the testimony of the plaintiff and defendant. A schedule of the defendant's property was set forth by the plaintiff, who alleged it was worth something like $25,000 or $30,000. The defendant did not attempt to avoid the payment of a reasonable sum for alimony to the wife, but insisted that the property he owned was not worth more than $13,000, upon which there was a mortgage of $8,000, and that he also owed other debts. In addition to this, he alleged that he could earn little or nothing by his present efforts, having recently lost an arm in a cotton-gin. On the other hand, he alleged that he had educated his daughter at the Georgia Normal and Industrial College at Milledgeville, that she was strong and capable of earning a living, and was at that time within a few weeks of arriving at age, when he would no longer be legally responsible for her maintenance and support; and that the wife was likewise strong and well, and could earn a livelihood. After hearing the oral testimony of the husband and wife, which was conflicting, the trial judge ordered the respondent to pay the applicant $60 per month, as temporary alimony, and $150 as attorney's fees. Failing to pay the amount ordered, a rule was issued against the respondent, at the instance of his wife, requiring him to show cause why he should not be attached as in contempt of court for failing to pay alimony as required by the order. To this rule the respondent made a sworn answer, which was not traversed or contradicted by oral testimony, and alleged the respondent's inability to raise the money by loan, sale of his property, or otherwise, though he had

attempted to do so, and that he had pointed out to the sheriff sufficient of the property belonging to him to make the sum required, and caused the same to be sold for the purpose of paying the alimony, which was done. He further alleged in his answer that his failure to pay the alimony was not intended as any disrespect to the court, but was the result solely of inability to raise the money. He prayed the court to modify the order and reduce the amount of alimony. Upon consideration of the case the judge made the rule absolute, adjudged the respondent in contempt, and ordered that he be committed to the common jail of Jefferson county (his then residence) without bail or mainprize. It was further ordered that the sheriff suspend the execution of the order until the 7th day of October, 1911, pending prompt payment at that time of the $60 of alimony that would be due on the 1st day of October, 1911, but that should that amount not be promptly paid by the said date, or should any awards in future not be paid within five days from the first day of each month, then "the said sheriff shall and he is hereby ordered to proceed with the execution of this order." The judge did not modify his order fixing the amount of alimony to be paid. To the judgment of the court the respondent excepted.

*J. W. Overstreet,* for plaintiff in error.

*White & Lovett,* contra.

HILL, J. (After stating the foregoing facts.)

1. Attachment for contempt for failure to pay an amount of alimony ordered by the court is a remedial proceeding to enforce its payment for the benefit of one of the parties to the suit. This proceeding is not a penal process to punish as for contumacious conduct toward the court, but to enforce the payment of the sum ordered but not paid. There is no suggestion in the record that the plaintiff in error was disrespectful or contumacious in his conduct toward the court. In a case of that sort the rule is different from where the attachment for contempt is merely to compel obedience to an order requiring the payment of money for the benefit of a litigant, where the party ordered fails to comply, not out of disrespect to the court, but for other causes within or without his control. Here the answer of the plaintiff to the rule nisi to show cause why he should not be punished for contempt alleged, that he did not comply with the order of the court because of his inability to comply; that he had made every reasonable effort to

raise the money to pay the amount ordered by the court, but had been unsuccessful in doing so, for reasons therein stated, and had even pointed out a portion of his property to be levied on and sold in order that the money might be raised; that this was done, and money more than sufficient to satisfy all that had been ordered paid was turned over to the attorneys of the libellant for that purpose. This answer of the respondent was not traversed, nor contradicted by testimony, and hence must be taken as true. So taking it, we think that the court erred in holding the respondent in contempt, and in committing him to jail without bail or mainprize; and in ordering that if any future payment was not met, the sheriff might remand the respondent to jail until the same was so paid. We think the judge exceeded his authority in this respect. It makes the sheriff the judge of a violation of the order. If the order is violated and the respondent fails to obey it, before he can be punished as for a civil contempt he has the right to be heard and purge himself of the contempt, if any has been committed, or to show any valid reason why he should not be adjudged in contempt. But surely a judgment of a court can not subject one to imprisonment for a future act, or failure to act, without a hearing, and especially upon the judgment of a sheriff without any new attachment for contempt and a hearing upon the same. Suppose the respondent had paid the money, but there was an issue as to that fact between the respondent and the sheriff, can it be said that the sheriff, by virtue of the former order of the court, could imprison the respondent on his own will and judgment? And can it be said that the respondent is not entitled to a hearing on this issue before he is so imprisoned? The rule for contempt, where one fails to pay alimony by order of the court, being a remedial proceeding to enforce the payment of the money ordered, the respondent is purged of the civil contempt whenever the money is shown to have been paid before final judgment. *Chittenden* v. *Brady*, 2 *Ga. Dec.* 219, pt. 2, and cases cited. There is a clear distinction between civil and criminal contempt. 9 Cyc. 6. "Attachment, the object of which is purely to compel the payment of money, is said to be clearly an execution upon the civil side of the court, and does not differ from the nature of other civil demands." *Chittenden* v. *Brady*, supra. The distinction between criminal and civil attachment has been very clearly defined by Judge Jenkins, in the case

of *Cobb* v. *Black,* 34 *Ga.* 162, 166-7, in the following language: "It is attempted to prove that the judge exceeded his power in prolonging the imprisonment beyond twenty days, by references to sections 4902, 4593, and 242 (specification 5). Those provisions of law refer to attachments for contempt which are purely punitive. They apply where an act has been done which has disturbed the regular proceedings of the court, or resisted its authority, or reflected contempt upon it. To prevent a repetition of the offense, and to deter others from its commission in future, the power of inflicting summary punishment is given to courts. The act has been done, and when the punishment shall have been inflicted the whole matter is at an end. These are the cases in which the power of fining is limited to two hundred dollars, and of imprisoning to twenty days. But there are cases, and such is the present, wherein the process of attachment is remedial. The court orders or decrees that a party, regularly before it, do a certain act necessary to the administration of justice, according to law, and the party refuses to do it. As the only means of compelling obedience and furthering the administration of justice, courts, in such cases, have power to imprison the refractory party until he shall obey the precept. A party may be practicing a scheme of fraud, involving millions of dollars, to the accomplishment of which the continued possession of certain assets, or papers, or books of account is necessary. The mind of the chancellor having jurisdiction over him, in a case pending, being properly informed, and his conscience satisfied, he requires the delivery of the assets, books, or papers to a receiver appointed, on pain of attachment for contempt. But if the extreme consequence of the attachment be a fine of two hundred dollars and imprisonment for twenty days, what prospect is there that he will forego the anticipated rich harvest of fraud, rather than suffer these light afflictions? Such a limitation of the power would operate rather as a license to, than a prevention of fraud. The power of imprisonment, to be effectual, must be coextensive with the contumacy of the wrong-doer. The object, in this case, is not to punish for an *act done,* in contempt of court, but to compel the doing of an act necessary to the administration of justice." Applying the ruling above made to the present case, we think the court erred, whether the case be treated as one of civil or criminal attachment. If it was civil, for failure to pay the money ordered to be paid,

then the respondent has purged himself of this contempt by having his property sold and the proceeds put into the hands of the plaintiff's·attorneys, which the record shows were more than sufficient to pay the demands of the judgment of the court. And this fact is not controverted by the record. The end of the law, therefore, having been attained, namely, the enforcement. of the payment of the alimony ordered to be paid by the court, it follows that to imprison the respondent after this has happened is error. On this branch of contempt the purpose of the law is not punitive, but remedial; and when the desired end of enforcing the claim of one of the parties against the other has been accomplished by the method provided by law, it is error to order the respondent to jail. If the case is to be considered as criminal attachment, the record shows that the answer of the respondent, which is not traversed, nor denied by testimony, alleges that no contempt of the court was intended. And this sworn answer, in the absence of a traverse or denial by testimony, is to be taken as true. The record nowhere discloses that there was any contumacious conduct on the part of the respondent towards the court, or that he expressly resisted its authority, or otherwise reflected contempt upon it. So, in either view of the case, we think the court erred in ordering the respondent remanded to jail as for contempt, without bail or mainprize.

2. This was a proceeding to attach the respondent for contempt, in the answer to which he included a request to have the alimony reduced in the future. The judge found him guilty of contempt, and ordered him imprisoned. In his order he said nothing about the application for reduction of alimony, except in so far as a ruling thereon is to be implied from his ruling on the attachment for contempt. And inasmuch as we are holding that the defendant was not in contempt at the time the order so adjudging him was passed, and that the judge erred in holding him in contempt at all under the statements set out, we will not direct him as to the application for reduction of alimony, which was merely incidental to and embodied as a part of the contempt proceeding. The application for reduction of future alimony we will not pass upon, inasmuch as we are now holding that he was not in contempt at all under the original order, and inasmuch as the application to have it reduced in future was incidental to and a part of the contempt proceeding, and inasmuch as it appears that he had already paid

ahead of the time he filed application to have it modified. The defendant can, if he desires, file an application to have the order granting temporary alimony modified, or can resist contempt proceedings should they arise hereafter. What we have said in the first division of the opinion disposes of the case on its substantial merits. It was a proceeding begun for the purpose of attaching the defendant for an alleged contempt. As a part of his showing, in his answer to this proceeding he showed cause why he should not be attached. In addition to this, he prayed that the original order be modified. No evidence was introduced, but the case was submitted on the pleadings. The facts showed that execution had issued against the defendant's property, and that enough of it had been sold and the proceeds turned over to the attorney for the plaintiff to pay all arrears of alimony; and this fact was mentioned in the order of the judge. It appears from the uncontradicted sworn answer of the defendant that a sufficient amount had been thus realized and paid over to the plaintiff's attorneys to cover instalments of alimony for some time in the future. We have held that under the showing made the defendant was not in contempt; and the judge had no authority to pass an order for an indefinite imprisonment of him, to be suspended, but subject to enforcement if the defendant did not make prompt payments in the future. This disposes of the real question at issue. As to the added application in the defendant's answer, that the order previously granted awarding alimony to his wife should be modified, no evidence was introduced and no such showing made as would authorize us on this hearing to declare that the judge erred in not modifying the previous order. If the defendant desires a modification, the burden is on him to show reasons therefor and support them by proper proof. It appears that in passing the original order the judge heard evidence of the parties and passed upon the facts as disclosed by it. In connection with the affirmative request of the defendant for a modification of the order thus made, he made no further showing. In the order granted by the judge in the present proceedings he did not specifically refer to this prayer; but treating the ignoring of it as being equivalent to a refusal, we can not say, on the meager showing presented to us, that there was any such abuse of discretion as to authorize us to direct such a modification.

3. A proceeding in an attachment for contempt is brought up on a fast writ the same as injunction cases. *Stokes* v. *Stokes,* 126 *Ga.* 804 (55 S. E. 1023) ; *Gray* v. *Gray,* 127 *Ga.* 345 (56 S. E. 438). The procedure is analogous to the procedure in injunction cases; and where the judge upon the hearing adjudged the defendant in contempt and directed that he be punished therefor, an assignment of error in the words, "to which order in adjudging plaintiff in error to be in contempt of court, and in refusing to modify and reduce the amount of alimony, the plaintiff in error then and there excepted, and now excepts, and assigns the same as error, and says that the court erred in adjudging the plaintiff for being in contempt, and erred in refusing to reduce said judgment for alimony," is sufficiently definite.

*Judgment reversed. All the Justices concur.*