## CARSON *v.* ENNIS, solicitor-general, *et al.*

1. The proceeding was by the solicitor-general, based on the information of a relator, and was to punish for a constructive criminal contempt.

2. In the case of constructive criminal contempt, the proceeding may be based on affidavit which discloses the state of facts relied on as establishing the contempt, or may be prosecuted by the solicitor-general of the circuit on the information of a relator. The relator need not have any private interest in the order alleged to have been contumaciously disobeyed.

3. In a proceeding by the solicitor-general for a criminal contempt, based on the information of a relator, which discloses the nature of the acts and conduct charged to be a contempt of the court's order, the contemnor is given notice of the charge and an opportunity to be heard where the court grants a nisi order fixing a time and place for hearing, and directs service of the proceeding and the nisi order on the contemnor, and the contemnor is served as provided in the order.

4. Where the contempt consists of personal presence and overt acts, those charged therewith can not be purged by their mere disavowal of intent under oath. A traverse of an answer to a proceeding for criminal contempt alleged to have been committed out of the presence of the court is not required, and the court may ascertain by testimony in the usual way whether the facts show that the contemnor be guilty of disobedience of the order of the court.

5. The statutory provision according a defendant in a criminal case the privilege of making a statement not under oath has no application in a trial for a criminal contempt of court.

6. The contempt proceedings sufficiently alleged the acts and conduct of the contemnor charged to be a contempt of court.

7. Under the facts appearing, the court did not err in adjudging the contemnor to be in contempt of court.

APRIL 12, 1917.

Rule for contempt. Before Judge Wright. Walker superior court. June 28, 1916.

Don C. Harris and others, taxpayers of Walker county, filed in the superior court of that county a petition against the Board of Commissioners of Walker county and certain other parties, for an injunction against the construction of a new court-house at LaFayette in Walker county, and the levying of taxes with which to pay for the same. The petition was presented to Judge Fite of the Cherokee circuit, on the representation that Judge Wright, of the Rome circuit, which embraces the county of Walker, was disqualified to act. Judge Fite granted a restraining order and a rule to show cause. Thereafter, on June 3, and before the time for the hearing had arrived, Judge Wright, on motion of the defendants and after notice, revoked that order, and granted an or-

der enjoining the defendants and the sheriff of Catoosa county "against executing or serving any process of Honorable A. W. Fite, judge of the superior courts of the Cherokee circuit, in or concerning any matter concerning the construction of Walker county court-house or any matter growing out of the same, or any contempt proceedings issued by the said Honorable A. W. Fite." The interlocutory hearing for injunction in the suit in which Judge Fite had granted a temporary restraining order came on to be heard before him on June 16, 1916, and on that date Judge Fite granted a temporary injunction against the county commissioners and the other defendants as prayed. The order further recited that it appeared that the commissioners of Walker county had made contracts with one of the defendants in violation of the restraining order, and it was thereupon directed that the sheriff of Catoosa county serve a copy of the order upon the commissioners and the other defendants, and that each of them be arrested and brought before him on June 24, and that they show cause why they should not be attached for contempt in violating the restraining order theretofore passed. Afterwards Norman Shattuck, who was not a party, filed an application to the superior court of Walker county, alleging that the sheriff and deputy sheriff of Catoosa county and J. S. Alsobrook and S. T. Carson of Walker county had violated the order passed by Judge Wright on June 3, 1916, by arresting J. D. McConnell, one of the commissioners, under an attachment issued by Judge Fite in a proceeding connected with the court-house controversy. It was alleged that the defendants Alsobrook and Carson aided in and procured the disobedience of Judge Wright's process by assisting the sheriff and his deputy in making the arrest. Based upon the information of Norman Shattuck, the solicitor-general of the Rome circuit filed a petition praying for a rule nisi directed to the defendants to show cause why they should not be adjudged in contempt of court. The rule nisi was granted and served upon Alsobrook and Carson. At the hearing of the contempt proceedings the defendants demurred and answered; and after hearing evidence the court adjudged Carson to be in contempt of court and imposed a penalty upon him. Thereupon Carson sued out a writ of error to this court.

*O. N. Chambers* and *W. H. Payne,* for plaintiff in error.

*Shattuck & Shattuck, Earl Jackson,* and *Barry Wright,* contra.

EVANS, P. J.  (After stating the foregoing facts.)   It appears that two judges of the superior courts of this State were each asserting an exclusive right to control litigation in Walker superior court, pertaining to the erection of a court-house in that county. It also appears that neither the relator, upon whose information the contempt proceeding is based, nor the alleged contemnor who brings this writ of error, was a party to the litigation.  These unusual features introduce certain complexities in the solution of the questions raised in the bill of exceptions respecting the practice and procedure in contempt cases.

1.  Counsel for both parties concede that the contempt sought to be punished is a criminal contempt.  It is apparent that the relator is not seeking to enforce any order made for the protection or enforcement of any private right, but to punish for alleged contumacious and disrespectful conduct towards the court in willfully disobeying the court's order.  An attachment for a criminal contempt may issue to preserve the power and vindicate the dignity of courts, and to punish disobedience of their orders.  *Cobb* v. *Black,* 34 *Ga.* 162; *Drakeford* v. *Adams,* 98 *Ga.* 722 (25 S. E. 833); *Davis* v. *Davis,* 138 *Ga.* 8 (74 S. E. 830); Gompers v. Buck's Stove & Range Co., 221 U. S. 418 (31 Sup. Ct. 492, 55 L. ed. 797, 34 L. R. A. (N. S.) 874).

2.  In the case of constructive criminal contempts, the proceedings may be based on affidavit which discloses the state of facts relied on as establishing the contempt, or may be prosecuted by the solicitor-general of the circuit on the information of a relator.  The relator need not have any private interest in the order alleged to have been contumaciously disobeyed.

3.  When the proceeding is brought by the solicitor-general in the name of the State, the proceeding does not fall within the category of ordinary suits, where the law requires process to be signed by the clerk.  The alleged contemnor, however, must have notice of the proceeding, and be given an opportunity to be heard.  This is effected when the court grants a nisi order on the petition of the solicitor-general, requiring the alleged contemnor to show cause at a certain time and place why he should not be adjudged in contempt, and provides for the service of the order and the other proceedings, and service is effected pursuant to such order.

4.  It seems to have been the ancient common-law rule that

where a party was charged with a constructive contempt of court, that is, with doing some act in disobedience of the court's order not in the presence of the court, he could answer under oath; and if by his answer he purged himself of the contempt, he was discharged. Under that old practice no testimony was received by the court, and the alleged contemnor was discharged; the only recourse being that he might be subsequently prosecuted for perjury if he swore falsely. But the doctrine of these old common-law cases has very generally been departed from in this country. It has been expressly repudiated by the Supreme Court of the United States and many State courts, where the contempt consisted of personal presence and overt acts. U. S. *v.* Shipp, 203 U. S. 563 (27 Sup. Ct. 165, 51 L. ed. 319, 8 Ann. Cas. 265); O'Flynn *v.* State, 89 Miss. 850 (43 So. 82). The acts alleged to constitute a contempt, as is charged in this proceeding, being overt acts, may be known to many. In determining whether its processes have been contemptuously violated or disobeyed, the court will proceed to hear testimony in such cases in the usual way. In contempt proceedings the only concern of the court is that the law should be obeyed and enforced. It follows that no traverse of the contemnor's answer is necessary in the proceeding under review.

5. While proceedings to attach for contempt which are punitive in their nature are sometimes spoken of as criminal, yet they are not subject in all respects to the rules of trial which apply to criminal cases, strictly so called. *Plunkett* v. *Hamilton, 136 Ga.* 72 (70 S. E. 781, 35 L. R. A. (N. S.) 583, Ann. Cas. 1912B, 1259). Under the practice of criminal trials in this State, a defendant is permitted to make an unsworn statement, and is not subject to an involuntary cross-examination. But an alleged contemnor is not entitled to this statutory right, which is given only to defendants on trial for crime preferred by indictment or accusation.

6. A contemptuous violation of the court's order may be punished, though the party charged with such violation was not a party to the proceeding in which the order was entered. O'Brien *v.* People, 216 Ill. 354 (75 N. E. 108, 108 Am. St. R. 219, 3 Ann. Cas. 966). However, it must be alleged in the contempt proceedings that the alleged contemnor had actual notice of the order for disobedience of which he is sought to be punished, and the acts or

conduct relied on as establishing the contempt must be clearly and distinctly alleged. The information and petition measured up to this test.

7. The respective proceedings in which Judges Wright and Fite passed the orders involved in the contempt matter were based on an action pending in the superior court of Walker county. Judge Wright is the judge of the superior courts of the Rome circuit, which embraces the county of Walker. The constitution declares that there shall be a judge of the superior courts in each circuit, who may act in other circuits when authorized by law. Civil Code (1910), § 6507. The judges of the superior courts have the right to grant writs of injunction in their respective circuits, and this authority may be exercised by any judge of another circuit whenever the resident judge is disqualified. Civil Code (1910), §§ 4850, 4851. Judge Fite assumed jurisdiction of the petition in Walker superior court because he held that Judge Wright was disqualified. Any disqualification of the judge of the Rome circuit would not affect the jurisdiction of the superior court of Walker county over the pending action. Such action is a suit in that county, and is governed by the rules of procedure and practice appertaining to pending causes. The statute requires that the clerk of the county where the suit is pending shall deliver the original petition and process, together with copies thereof, to the sheriff or deputy sheriff of the county where the suit is pending, for service. Civil Code (1910), § 5564. If the sheriff is a party, the process shall be directed to the coroner of the county and to the sheriffs of the adjoining counties, and served by either. Civil Code (1910), § 5571. Where a sheriff is disqualified and it does not appear on the face of the proceedings, or he or his deputy refuses to perform a service, if any person makes affidavit thereof, the process may be served by the coroner. Civil Code (1910), § 614. But in the absence of such affidavit in instances referred to in this code section, service by the coroner is void. *Blance* v. *Mize*, 72 *Ga.* 96. The nisi order issued by Judge Fite for the service and arrest of the parties alleged to have violated the restraining order issued by him was directed, not to the sheriff of Walker county, but to the sheriff and deputies of Catoosa county. The sheriff of Walker county was not a party, nor does it appear that he was in any wise disqualified or unable to act or refused to act. Under

such circumstances Judge Fite was without authority to direct his process to the sheriff of Catoosa county. Moreover, at the time Judge Fite issued the rule nisi to the sheriff of Catoosa county, Judge Wright on a motion to revoke the temporary restraining order of Judge Fite, made in the pending case, had adjudged that he was not disqualified, and had enjoined the defendants and the sheriff of Catoosa county from serving any process issued by Judge Fite concerning the court-house controversy. On writ of error to this court it was held that Judge Wright was not disqualified. *Young* v. *Harris,* 146 *Ga.* 333 (91 S. E. 37). It is unfortunate that the parties should not have awaited a decision by this court as to the disqualification of Judge Wright, before pressing any further phases of the litigation before a judge of an adjoining circuit. The calm and dispassionate enforcement of the law by the courts is the strength of our government. The court in this case was authorized to find that the plaintiff in error, with full knowledge of and with intent to disobey the order of Judge Wright, had assisted in the arrest of one of the county commissioners; and the adjudication that the plaintiff in error was in contempt of court is supported by evidence.

*Judgment affirmed. All the Justices concur.*