ALRED *et al.* v. CELANESE CORPORATION OF AMERICA.
PEDIGO *et al.* v. CELANESE CORPORATION OF AMERICA.
WOMACK *et al.* v. CELANESE CORPORATION OF AMERICA.

Nos. 16596, 16597, 16598. MAY 13, 1949. REHEARING DENIED JUNE 15, 1949.

374

376

*Poole, Pearce & Hall, Wright & Scoggin, M. G. Hicks, C. T. Culbert, Isadore Katz,* and *David Joffe,* for plaintiffs in error.

*Wright, Rogers, Magruder & Hoyt,* contra.

BELL, Justice. We shall deal with cases numbers 16,596, 16,597, and 16,598 in one opinion, since they all involve the same questions. It will also be sufficient here to mention by name only one of these cases, to wit, 16,597, in which J. D. Pedigo, C. L. Ross, A. C. Carroll, and H. D. Dodd jointly assigned error on the denial of their petition for a permanent stay of the contempt judgments that had been rendered against them. We are considering these three cases first, for, if it should be held that the court erred in refusing the petitions for stay, it would seem that the other four cases mentioned in the statement, based on direct exceptions to the contempt judgments themselves, should then be treated as moot. Counsel for the plaintiffs in error concede that they should be so treated in that event.

■ ·It is contended in case 16,597 that the contempts charged and adjudged were civil contempts, as distinguished from criminal contempts, and that such being their character, the alleged contempts together with the judgments thereon were extinguished by the agreement between the parties settling the basic controversy. Though citing many authorities from other jurisdictions, including decisions of the United States Supreme Court, the plaintiffs in error rely mainly upon *Wagner* v. *Commercial Printers,* 203 *Ga.* 1 (45 S. E. 2d, 205); referring, however, to some additional Georgia cases as tending to support their contention.

We may state at this point, that, after a careful consideration of the subject, we have reached the conclusion that the decision in the *Wagner* case was an incorrect pronouncement in so far as it held that the contempt there under consideration was a civil contempt. The author of the opinion in that case, the present Chief Justice, indicated to counsel during the argument of the instant case that he was doubtful as to the soundness of that decision, and supplemental briefs were later invited with respect to that question, and also as to the reasonable-doubt rule, which will be dealt with in *Pedigo* v. *Celanese Corporation,* 16,581, post 392.

We are of the opinion that the contempts here in question can-

not properly be classed as civil contempts, but that they are criminal contempts, or quasi-criminal, according to the classifications generally made by the courts, including several decisions by this court. Be it understood, however, that we are not in such classification referring to these alleged contempts as crimes. As to the definition of crime, see Code, § 26-201. Nor do we mean that a citation or rule for contempt in such case and a trial thereon would amount to a criminal prosecution. We say this, notwithstanding the fact that some if not all of the acts charged in the instant petition for citation for contempt might amount to misdemeanor crimes under the act approved March 17, 1947. Ga. L. 1947, p. 620. The plaintiffs in error were not prosecuted for a violation of that statute, but were merely cited to show cause why they should not be adjudged guilty of contempt in violating an injunctive order, the maximum punishment for which would be far less than the maximum prescribed by law for a misdemeanor. Code, §§ 24-2615 (5), 27-2506. For these and other reasons which will later appear in this opinion, it would seem that such contempt in disobeying the injunction would be only quasi-criminal, and, correctly speaking, should be so designated, although it is often referred to simply as criminal. We are here referring, of course, only to the general words of description as we think they should be understood under the laws of this State. See *Hayden* v. *Phinizy*, 67 *Ga.* 758; *Tomlin* v. *Rome Stove & Range Co.*, 183 *Ga.* 183 (187 S. E. 879); *Plunkett* v. *Hamilton*, 136 *Ga.* 72, 77 (70 S. E. 781). It has been stated by the United States Supreme Court, that a court when enforcing obedience to its orders by proceedings for contempt is not executing the criminal laws of the land. In re Debs, 158 U. S. 564 (15 Sup. Ct. 900, 39 L. ed. 1092); Myers *v.* U. S., 264 U. S. 95 (44 Sup. Ct. 272, 68 L. ed. 577). But for statements apparently contra, see Michaelson *v.* U. S., 266 U. S. 42 (45 Sup. Ct. 18, 69 L. ed. 162); Ex parte Grossman, 267 U. S. 87 (45 Sup. Ct. 332, 69 L. ed. 527); United States *v.* Goldman, 277 U. S. 229 (48 Sup. Ct. 486, 72 L. ed. 862). See also, in this connection, 12 Am. Jur. 435, § 67; 17 C. J. S. 72, § 62.

We are not in this case concerned with such contempts as disorder in the courtroom, an attempt to bribe or otherwise improperly influence a jury, improper conduct or language of an attor-

ney, and similar instances of misconduct not referable to any order, judgment, or process of the court in a pending case; for the alleged contempts here under consideration were the doing of acts that had been forbidden by a restraining order granted in an equity or civil case, where no money or other property was sued for, but in which the sole and only relief sought was an injunction against the doing of such acts.

Now as to the bases of classification: The Constitution provides: "The power of the courts to punish for contempt shall be limited by legislative acts." Code, § 2-120. It is declared in the Code: "Every court has power . . (3) To compel obedience to its judgments, orders, and process, and to the orders of a judge out of court, in an action or proceeding therein." § 24-104. "The powers of the several courts to issue attachments and inflict summary punishment for contempt of court shall extend only to cases of misbehavior of any person or persons in the presence of said courts or so near thereto as to obstruct the administration of justice, the misbehavior of any of the officers of said courts in their official transactions, and the disobedience or resistance by any officer of said courts, party, juror, witness, or other person or persons to any lawful writ, process, order, rule, decree, or command of the said courts: . ." § 24-105. "All orders and decrees of the court may be enforced by attachment against the person; decrees for money may be enforced by execution against the property." § 37-123. "Every decree or order of a superior court in equitable proceedings may be enforced by attachment against the person for contempt; and if a decree shall be partly for money and partly for the performance of a duty, the former may be enforced by execution, and the latter by attachment or other process." § 37-1208. "Injunction . . may be enforced also by attachment." § 37-1210. "The superior courts have authority . . (5) To punish contempt by fines not exceeding $200, and by imprisonment not exceeding 20 days." § 24-2615.

All of the foregoing provisions were contained in the same or substantially the same language in the Code of 1863, and in each of the subsequent Codes. See Code of 1863, §§ 4902, 200, 4593, 4125, 4127, 242 (5).

In *Cobb* v. *Black*, 34 *Ga.* 162, decided in 1865, the court had for

consideration the nature of an order requiring the defendant in an equity case to turn over certain property to a receiver. The defendant had been attached for contempt for disobeying the order. The sheriff was commanded to keep him in jail until he should deliver the property as the order required. He applied for the writ of habeas corpus, which the judge refused, and he excepted. This court, after quoting from the Code of 1863 what is now § 24-104 (3), supra, proceeded to distinguish between punitive and remedial contempts in the following language: "It is attempted to prove that the Judge exceeded his power in prolonging the imprisonment beyond twenty days, by reference to sections 4902, 4593, and 242 (specification 5.) Those provisions of law refer to attachments for contempt which are simply punitive. They apply where an act has been done which has disturbed the regular proceedings of the court, or resisted its authority, or reflected contempt upon it. To prevent a repetition of the offense, and to deter others from its commission in future, the power of inflicting summary punishment is given to courts. The act has been done, and when the punishment shall have been inflicted, the whole matter is at an end. These are the cases in which the power of finding [fining] is limited to two hundred dollars, and of imprisoning to twenty days. But there are cases, and such is the present, wherein the process of attachment is remedial. The court orders or decrees that a party, regularly before it, do a certain act necessary to the administration of justice, according to law, and the party refuses to do it. As the only means of compelling obedience and furthering the administration of justice, courts, in such cases, have power to imprison the refractory party until he shall obey the precept." While the contempt there involved was held to be remedial or civil in character, the distinction made was necessary to the conclusion reached, and is pertinent here.

In *Durand* v. *Howard*, 36 *Ga.* 346, it was said: "In this case, the defendant was enjoined from using or selling the property in litigation. This injunction, the plaintiff alleges, has been violated by the defendant. Suppose the court had 'committed defendant for said contempt,' would this afford any remedy to Howard? Would it restore the property sold? Do not the facts show that the only effect of the punishment would be to vindicate the au-

thority of the court, and not to furnish any remedy for the plaintiff? We think so. Hence the question was one for the discretion of the court below. If this were a remedial proceeding, to which the plaintiff is entitled for the enforcement of his rights, then we would control the discretion of the court below, and award to the party that relief to which, under the facts and the law, he would be entitled." The court thus considered the violation of the injunction in that case as being a criminal contempt.

In *Carson* v. *Ennis*, 146 *Ga.* 726 (92 S. E. 221), it appeared that Carson was adjudged in contempt of court and a penalty was imposed upon him, for aiding and procuring the violation of an injunctive order issued in a case in which no other relief except injunction was sought. This court said: "It is apparent that the relator is not seeking to enforce any order made for the protection or enforcement of any private right, but to punish for alleged contumacious and disrespectful conduct towards the court in wilfully disobeying the court's order"; and the alleged contempt was considered and dealt with as a criminal contempt.

The foregoing statements as to the distinction between civil and criminal contempts accord in a general way with formulas usually found in decisions and texts. Gompers *v.* Buck's Stove & Range Co., 221 U. S. 418 (31 Sup. Ct. 492, 55 L. ed. 797, 34 L. R. A. (N. S.) 874); Lewis *v.* U. S., 330 U. S. 258 (67 Sup. Ct. 677, 91 L. ed. 884); Walling *v.* Crane, 158 Fed. 2d, 80; Smith *v.* Clothier, 113 Kan. 47, 51, 52 (213 Pac. 1071); 17 C. J. S. 74-79, § 62, b; 12 Am. Jur. 433, 435, §§ 66, 67.

As many courts have further said, however, it may not always be easy to classify a particular act as belonging to either one of the two classes, for it may partake of the characteristics of both.

In the Gompers case it was stated: "It is not the fact of punishment, but rather its character and purpose, that often serve to distinguish between the two classes of cases. If it is for civil contempt the punishment is remedial, and for the benefit of the complainant. But if it is for criminal contempt the sentence is punitive, to vindicate the authority of the court. It is true that punishment by imprisonment may be remedial as well as punitive, and many civil-contempt proceedings have resulted not only in the imposition of a fine, payable to the complainant, but also in committing the defendant to prison. But imprisonment for

civil contempt is ordered where the defendant has refused to do an affirmative act required by the provisions of an order which, either in form or substance, was mandatory in its character. Imprisonment in such cases is not inflicted as a punishment, but is intended to be remedial by coercing the defendant to do what he had refused to do. The decree in such cases is that the defendant stand committed unless and until he performs the affirmative act required by the court's order. . . The distinction between refusing to do an act commanded—remedied by imprisonment until the party performs the required act; and doing an act forbidden—punished by imprisonment for a definite term; is sound in principle, and generally, if not universally, affords a test by which to determine the character of the punishment."

As further illustrating civil contempt, see *Beavers* v. *Beavers,* 148 *Ga.* 506 (97 S. E. 65), where the defendant failed to pay alimony in compliance with the judgment of the court; *Swanson* v. *Douglas,* 150 *Ga.* 650 (105 S. E. 161), where the defendant failed and refused to execute a deed in conformity with a decree of specific performance.

In the instant case, the plaintiff did not seek enforcement of any affirmative right as against any one of the defendants, but merely sought an injunction to prevent interference with the plaintiff and its employees in the conduct of its business; and in the contempt proceedings the defendants were simply charged with doing acts that had been forbidden by a restraining order.

In the *Wagner* case, 203 *Ga.* 1 (supra), the general rule for distinguishing between a civil and a criminal contempt was correctly stated, but we overlooked the fact that the plaintiff in that case (as in the case now before us) was not seeking to enforce any affirmative right which it had against the defendant, and that the order alleged to have been violated was merely negative in character, restraining the defendants from doing stated acts. We thus inadvertently fell into error in classifying the violation of the order as a civil rather than a criminal contempt. The decision was not concurred in by all the Justices, one being absent. Therefore it is not absolutely binding upon this court as a precedent, and, in view of what has been said, it will not be followed in the instant case in so far as it held that the particular act there under consideration was a civil contempt. Compare

Code, § 6-1611. This is not to say, however, that the judgment rendered in that case affirming the judgment of the trial court was incorrect under the pleadings and the evidence. Compare *Pedigo* v. *Celanese Corp. of America* (16,581), post, 392.

The alleged contempts having been committed solely in violation of an injunctive order issued by the court as an institution of government, and punishment having been meted only as provided in Code § 24-2615 (5), such contempts were matters affecting the public interest, and, being thus quasi-criminal in nature, they could not be extinguished or rendered moot by any settlement between the parties. § 102-106. Nor could their essential nature as public wrongs be changed, either by the fact that the petition for citation was brought by the plaintiff in the main case, or by any conception that the trial judge himself may have had regarding its character. While the nature of a proceeding under which one is required to answer for an alleged contempt may sometimes be an important matter for consideration, mere matters of procedure are not controlling in determining the character of the contempt itself as being either civil or criminal. See Gompers *v.* Buck's Stove & Range Co., 221 U. S. 418, p. 446 (supra), last two paragraphs of the decision.

■ But it is further contended that the contempt proceedings here were, as a matter of fact, "civil contempt proceedings," and were so recognized by the judge, both in ruling upon the admissibility of evidence and in basing his decision upon the preponderance-of-evidence rule; and that, in these circumstances, unless the contempt orders and judgments are permanently stayed, the plaintiffs in error will be denied liberty without due process of law by being convicted of an act criminal in nature rather than for an act civil in nature, after having been tried as if the acts were civil only. (See allegations in the petition for stay.)

The gist of this contention, as we understand it, is that, since the proceedings themselves were (as insisted) "civil contempt proceedings," they would as such necessarily fall as a result of the settlement; and that, unless the contempt judgments should be ordered to fall with them, the plaintiffs in error would be denied due process of law by being punished as for criminal contempts after being convicted solely upon civil contempt proceedings. We shall not pass upon this contention in toto, for

in our view of the case it will be sufficient to show, as we think is true, that the contempt proceedings were not civil proceedings in the sense that they would not support the judgments for criminal contempt as rendered, or be subject to private agreement and settlement between the parties so as to affect such judgments.

It should be borne in mind that the allegations as to how the judge regarded the case, both in ruling upon evidence and in making up his decision, are contained in a mere petition for stay, and are not set forth as assignments of error upon the contempt orders themselves, or other judgment. Seemingly, they were made simply to reinforce the contention that the proceedings were civil contempt proceedings, but, in any view, the real character of the proceedings could not be altered by any allegations in the petition for stay as to how the trial judge may have regarded them.

Counsel further say in effect, however, that these proceedings were civil in character, because the petition for citation or rule nisi was brought by the plaintiff in the original equity case, acting for its own private benefit, and was entitled and tried as a part of the main case; whereas proceedings for criminal contempt, they insist, should be instituted as a separate and independent case in the name of the State or in its behalf by its prosecuting attorney, and would constitute an action at law rather than a suit in equity.

The Gompers case, on which the plaintiffs in error apparently rely most strongly in this connection, originated in a trial court in the District of Columbia. After being there convicted for violation of an injunction, the respondents carried the case on direct exceptions first to the Circuit Court of Appeals and then to the United States Supreme Court. It was held by the latter court that the proceedings in which the respondents were convicted were civil in character, subject to settlement by the parties. In the first place, we do not think that the decision in the Gompers case involved any Federal question that would make it binding as a precedent on the question we are now discussing; but it may be said in addition that the Gompers case is clearly distinguished by its facts from the present case as related to the nature of the contempt proceedings. Without enumerating the many points of difference, we merely call attention to the conduct of the parties in the various courts as outlined in that deci-

sion, and the prayers of the petition for citation in that case as compared with the prayer in the instant case.

In the present case, the only prayer in the petition for citation was that the respondents show cause why they "should not be adjudged in contempt of the orders and process of this court and be punished accordingly." This prayer did not indicate that the plaintiff was asking that the respondent be punished as for a civil contempt. While, as we have said, the petition for citation was filed by the plaintiff and was entitled in the main cause, there are no other facts or circumstances shown in the petition for stay (which is the only matter here for consideration) which would even tend to indicate that either the plaintiff or its attorneys regarded the alleged contempt as civil rather than criminal. Nor does it appear that they made any effort whatever to mislead either the court or the respondents.

Moreover, regardless of what may be the law in other jurisdictions, we are of the opinion that the procedure adopted in this case was a proper method under the law of Georgia for requiring respondents to answer for alleged criminal contempt. A petition for rule nisi or citation brought by the original plaintiff, entitled in the main cause, has long been recognized in this State as a proper method of procedure, even though it may appear that the alleged contempt arose in violation of an injunction and was criminal or quasi-criminal in nature. See, in this connection: *Howard* v. *Durand*, 36 *Ga.* 346 (91 Am. D. 767); *Williams* v. *Lampkin & Co.*, 53 *Ga.* 200; *Thweatt* v. *Gammell*, 56 *Ga.* 98; *Hayden* v. *Phinizy*, 67 *Ga.* 758; *Warner* v. *Martin*, 124 *Ga.* 387 (52 S. E. 446, 4 Ann. Cas. 180); *Tomlin* v. *Rome Stove & Range Co.*, 183 *Ga.* 183 (supra).

Under the law of Georgia, no particular form of procedure is necessary or required. The matters of real importance are that respondents be given notice, with sufficient specification as to charges, and opportunity to be heard. We need not determine here whether such a petition by the original plaintiff is the only permissible practice. There are instances where proceedings for criminal contempt were instituted by solicitors-general. See *Bradley* v. *State*, 111 *Ga.* 168 (36 S. E. 630, 50 L. R. A. 691, 78 Am. St. R. 157); *Carson* v. *Ennis*, 146 *Ga.* 726 (92 S. E. 221); *Jones* v. *State*, 166 *Ga.* 553 (144 S. E. 106).

In further reference to the procedure adopted in the instant case, let it be remembered that Code, §§ 37-123, 37-1208, and 37-1210, regarding attachment, for contempt, are found in the title on equity, and they have occupied the same relative position since the adoption of the Code of 1863. Was it ever contemplated by the law of Georgia that all suits for injunction may ultimately have to be policed by the State through its prosecuting attorneys? Shall a party who is about to institute a suit for injunction also bear in mind that he may later have to request some prosecuting attorney to take over, in case an injunction is granted and is violated? We do not think that our law would absolutely require such multiplicity or circuity of proceedings in a matter of this character. If a party has sufficient interest in a matter or controversy to justify him in asking for an injunction, then it seems that he would in like manner have sufficient interest to maintain a petition for a rule nisi for contempt in the event the injunction should be violated—especially as punishment would tend to prevent or deter a repetition of the forbidden interference.

It may be that a proceeding for criminal contempt is in one sense an additional case to the main suit in equity, in that it will require new pleadings, separate trial, and a separate judgment. But, after all, it stems from the same equity case, and it certainly cannot be considered as an independent case; and where a proper citation for contempt is brought by the plaintiff in the original equity suit, it may be considered as a branch of the equity case and tried accordingly. See *Hayden* v. *Phinizy,* 67 *Ga.* 758 (supra), *Tomlin* v. *Rome Stove & Range Co.,* 183 *Ga.* 183 (supra), *Warner* v. *Martin,* 124 *Ga.* 387 (supra). *Auto Highball Co.* v. *Sibbett,* 11 *Ga. App.* 618 (75 S. E. 914), was not a suit in equity, and may perhaps be otherwise distinguished by its facts from the instant case, but in so far as that decision may be contrary to the views herein expressed, it will not be followed.

It would too greatly prolong this opinion to cite and discuss all of the cases relied on by counsel for the plaintiffs in error, but what has been said above will, as we believe, cover in a general way the several contentions made. It is our opinion that the contempt proceedings were not civil proceedings in the sense that they would not support the judgments for criminal contempt as rendered by the trial court; nor were they subject to private

agreement and settlement between the parties so as to affect such judgments. It follows from what has been said that the court did not err in denying the petitions for stay.

In the view which we have taken of the other questions, it is unnecessary to pass on the contention of the defendant in error that paragraph 8 of the settlement agreement had the effect of excluding therefrom the contempt cases wherein the respondents had already been tried and convicted.

*Judgments affirmed in cases 16,596, 16,597, 16,598. All the Justices concur.*