32908.   KENIMER *v.* STATE OF GEORGIA *ex rel.*
WEBB, *Solicitor-General*

DECIDED APRIL 14, 1950.

438

442

*Lindsay, Dorsey & Hill, Harris, Chance & McCracken, Camp & Camp,* for plaintiff in error.

*Paul Webb, Solicitor-General, William Hall,* contra.

FELTON, J. 1. We are faced at the outset with the necessity to determine the effect of the rulings on the demurrers and motion to quash. If the demurrers and motion to quash properly raised the question whether the petition charged only one act of contempt or two hundred and thirty-eight, the rulings thereon became the law of the case and this court is precluded from further consideration of the question. We think that the demurrers and the motion to quash did properly raise the question and that the rulings, unexcepted to, became the law of the case. The court had jurisdiction of the parties and subject-matter. The preliminary paragraphs of the petition state the history of the case against the respondent and the facts related therein clearly show what is contended to be the truth of what happened. The demurrer and motion were directed at the petition as a whole and not merely to each and all counts. The petition as a whole showed that under the facts alleged there was either just one act of contempt or there were two hundred and thirty-eight. The demurrer was not a speaking demurrer as a decision on this point was necessary without consideration of any extraneous facts. Of course the facts alleged had to be proved to authorize a judgment but that is beside the point on

the question under discussion. The rulings in civil cases as to the binding effect of a judgment on pleadings unreversed or not set aside are also applicable to criminal cases. *Matthews* v. *State,* 125 *Ga.* 248 (54 S. E. 192); *Griffin* v. *Eaves,* 114 *Ga.* 65 (39 S. E. 913). Code § 27-1501 does not mean that such a ruling on a demurrer or motion to quash, in a criminal case, shall not be binding as the law of the case if unexcepted to. It simply means that a defendant may show that he is not guilty as charged under the law, including the law of the case, if the judgments on his demurrers and special pleas are not excepted to. The rulings herein discussed having become the law of the case the information charged two hundred and thirty-eight acts of contempt, whether correctly or incorrectly. The case might be different if the demurrers had attacked the individual counts alone and not the whole petition.

2. The rulings referred to in division one having become the law of the case they were controlling on the judge in his subsequent determination of the motion in arrest of judgment which involved the identical question. *Herb* v. *Wolfe,* 75 *Ga. App.* 20 (1) (41 S. E. 2d, 817).

3. Grounds four through nine of the amendment to the motion for a new trial complain of the admission of various pleadings in the main divorce case and related custody proceedings. These grounds do not contain the evidence referred to but even if they did we do not see how the admission of the pleadings to show the history of the case and not as evidence of the facts contended for by the respective parties could have harmed the respondent insofar as the sole issues of contempt were concerned.

4. In ground ten of the amended motion error is assigned on the exclusion from evidence of the following letter: "Atlanta, Georgia, July 25, 1947. Mr. Charles Kenimer, 195 Beverly Road, N.E., Atlanta, Georgia: Charlie: As I have often times told you I am not divorcing you to marry Wade Senter, and since we have agreed upon the custody of Betty, I hereby promise you that if any time in the future I should marry Wade Senter, then you can have the custody of Betty, and I will not oppose or object to you having custody, if this should happen. I further agree that you may use this letter as evidence in any

court, as I again reiterate I will not marry Wade Senter. Yours truly, Muriel Moran Kenimer." The exclusion of the letter was not error. It had no relevancy or probative value on the contempt issue. There is no complaint that the court refused to consider it in fixing punishment.

5. Grounds of the amended motion eleven through fourteen are mere elaboration of the general grounds and are controlled by the law of the case. The evidence authorized the finding that the respondent was guilty of contempt as charged in the petition, and there was no error in overruling the motion for a new trial on all grounds properly included, which does not include exceptions to the sentence imposed.

6. The court had jurisdiction to impose punishment on each count though the total exceeds the legal limits for one count. *Brannon v. State*, 21 *Ga. App.* 328 (94 S. E. 259); Peters *v.* U.S., 94 Fed. 128 (7) (36 C.C.A. 105); Ex parte A. S. Genecov, 143 Tex. 476 (186 S.W. 2d, 225, 160 A.L.R. 1099).

7. We now come to the most difficult questions in the case, whether the punishment inflicted is an abuse of judicial discretion and so cruel and unusual as to contravene article I, section I, paragraph IX of the State Constitution. While it may seem somewhat illogical to say that even if the punishment meted out on each individual count is legal and proper the sum total is excessive, cruel and unusual, the cumulative result and effects of the judgment cannot be avoided by dividing it into pieces. The court rendered but one judgment and knew what the effect of that judgment would be, a fine of $11,900 and confinement in jail for over three years. It may be logical, or at least more nearly logical, to say that the sentence on each individual count was excessive under the circumstances, when their cumulative effect is taken into consideration. We think that the sentence is contrary to the spirit of the law of this State and against its policy. The law limits the punishment for a single contempt to the maximum of $200 and twenty days in jail, no matter how malicious, how flagrant, and how iniquitous the act of contempt might be. If the respondent had been caught at the State line the first day his punishment could not have exceeded a fine of $200 and confinement in jail for twenty days, despite the fact that he had the same overall design and purpose as he would

have had if he had succeeded in his purpose and defied the court two hundred and thirty-seven more days. The sentence in this case seems to include multiple and cumulative punishment for a single design. We do not say that the judge was in error because he imposed sentence for each technical violation of the court's order, under the law of the case, but we do think that the punishment was excessive in its entirety. Another reason why the sentence is contrary to the spirit of the law of contempt and the law against cruel and unusual punishments, is that the sentence to long confinement in jail is so exceptional. To say that it is unusual is to put it mildly. Jails are primarily places of confinement and not places or methods of punishment except in a few cases, misdemeanor cases and contempt cases and possibly others, but it is seldom that in misdemeanor cases a criminal is required to serve more than six months in jail even under sentences involving more than one misdemeanor. Such a long term in jail will inevitably tend to impair the health of the respondent. While we agree that the respondent should suffer some punishment we do not think that the very law which he is being tried for flouting and trampling under his feet should be so oppressive and cruel in its dealing with him as to tend to make it unworthy of the respect which the respondent is charged with abusing. We intend no criticism of the trial judge whose error on such a novel question was actuated by a high devotion to the courts and laws which have been so lightly treated by the respondent. In such a case as this the plane of observation is sometimes the difference between justice and error. We dare say that if our point of observation were reversed with that of the trial judge and he reviewed the same sentence our too-close-up view would be revised by him.

The court did not err in rendering any of the judgments complained of except the sentence, which was erroneous. The judgments are affirmed with the exception that the judgment imposing sentence is reversed with direction that the court, without retrying the issues, enter another judgment imposing sentence not inconsistent with this opinion.

*Judgments affirmed in part, and reversed in part with direction. Gardner, Townsend and Worrill, JJ., concur. Sutton, C.J., and MacIntyre, P.J., dissent.*

SUTTON, C. J., dissenting. It was adjudicated on demurrer and on the motion to quash in the superior court that the petition against Charles M. Kenimer Jr. charged and set up 238 separate acts of contempt against him. These rulings were not excepted to and became the law of the case in this respect, whether right or wrong. It appears from the record that the evidence upon the hearing authorized the finding that the respondent was guilty of contempt as charged in the petition filed against him. The judge of the superior court then imposed a fine of $50 and imprisonment of 5 days upon the respondent on each of the 238 contempt charges against him. If the respondent was guilty of 238 separate offenses of contempt, as was determined in this proceeding, then it would follow that the trial judge had the authority to punish him on each offense; and where the punishment imposed does not exceed that prescribed by law, I am inclined to believe this court cannot legally reverse or set the judgment of the trial judge aside on the ground that the sum total of the punishment was excessive, cruel, and unusual.

I concur in divisions 1, 2, 3, 4, 5, and 6 of the majority opinion and dissent from the ruling in division 7 thereof.

MacINTYRE, P. J., dissenting. In the order of the court overruling the motion to quash and the demurrer to the petition for adjudication of contempt against the defendant the court said:

"The petition for adjudications of contempt against defendant alleges in substance that defendant, Charles M. Kenimer Jr., invoked the jurisdiction of this court for an award to him of the custody of his minor child, Betty Ann Kenimer, who was in the lawful custody of her mother; that pending the determination of that petition, defendant Kenimer came into this court and procured an order authorizing him to visit said child upon certain days between certain hours, provided he was accompanied at all times during such visits by one of his attorneys who were charged, in so accompanying said Kenimer, as officers of the court with 'seeing that said child was returned to the home of her said mother by 4:30 on each day of visitation.' The petition further alleges that on February 5, 1949, said Kenimer, accompanied by one of said officers of court, went to the home

of the child's mother in Clarke County and carried the child to the home of Kenimer's parents in Atlanta and that while there said defendant, Charles M. Kenimer Jr., wilfully took, removed and spirited said child away, with the purpose and intention of removing said child beyond the jurisdictional limits of the State of Georgia and beyond the jurisdictional limits of the United States of America, and failed and refused to return said child to the home of her mother in Clarke County, Georgia, on Saturday, February 5, 1949, as required by the order of the court so to do, each and every day thereafter until and including October 1, 1949, all in violation of and in contempt of the orders, judgments and authority of said court, and for the purpose of preventing the effectual exercise of the jurisdiction of the court which he had invoked on the question of the custody of the child; contrary to and in flagrant disobedience of the authority, orders, judgments and jurisdiction of the State.

"Count One

"Count one charges that on February 5, 1949, defendant Kenimer did take, remove and spirit away said child and failed and refused on said day to return said child to the home of the mother of said child in violation of the order of this court of January 28, 1949, requiring him to so return said child to the custody of the mother, and that on said date the defendant removed the said child without the jurisdictional limits of this State for the purpose of interfering with and impeding the effective exercise of the jurisdiction of this court respecting the determination of the permanent custody of the said child in said case.

"Other Counts

"Count two charges defendant Kenimer with contempt of this court in that on February 6, 1949, he refused to return the child to her mother as required by this court's order of January 28, 1949, and that he did on said date keep said child without the jurisdictional limits of this State for the purpose of impeding and interfering with the jurisdiction of this court respecting the determination of the permanent custody of said child as invoked by him in said case.

"Each of the other counts is in substance and form the same, as count two except that a different date is alleged in each.

"All of the questions raised by the motion to quash and by the demurrers must be determined by the allegations of the petition and only by such.

"Motion to Quash.

"Defendant moved to quash the proceedings upon the ground that said citation seeks to carve out of one alleged offense two hundred thirty-eight separate offenses.

"I believe that if the petition sufficiently alleges one instance of contempt it would be my duty to overrule the motion to quash, and since it by its terms concedes that the petition alleges one contempt, this motion should be overruled. This motion is addressed to the whole petition (not to just parts or different counts) and since it does not impeach the whole petition, it is without merit. However, since ground three of the demurrer which attacks counts two to two hundred and thirty-eight, inclusive, is based upon the same general theory that the petition charges defendant with but one contemptuous act or the continuance of the same contemptuous act for a period of two hundred thirty-eight consecutive days and therefore that there can be no separate punishment for each day, I will treat of this contention here.

"As I stated, we must take the facts as alleged in the petition. It alleges a failure or refusal to return the child on each of two hundred thirty-eight separate days. Each refusal is alleged to be a violation of the court's order.

"It is to be noted that each count of the petition alleges two matters: (1) That the defendant did on the date alleged violate an order of this court by refusing to return the child to the custody of its mother; (2) that defendant on the date alleged kept said child out of the jurisdiction for the purpose of impeding and interfering with the jurisdiction of the court respecting the determination of the permanent custody of the child.

"In brief, the first item charges a violation of the court's order by a refusal to obey and the second item charges obstruction of the operation of the court.

"On the first item the defendant contends that if there is alleged any violation of the court's order it appears that there was only one act—a continuous failure to return the child.

"It seems elementary to state that, of course, *one* order may

be violated more than one time. For illustration—the court orders and enjoins John Doe from removing his car from his garage for a period of one month. On Monday John Doe takes his car out of the garage for a drive but returns it to the garage Monday night. Then on Tuesday he again takes the car out for a drive and likewise returns it to the garage Tuesday night. Then on Wednesday he does the same. Is he not guilty of three violations of the court's order and is he not punishable for three contempts?

"Yet counsel's argument applied to that illustration would be that if John Doe took the car out of the garage on Monday and drove it continuously day and night until the end of the month then John Doe would be violating the court's order only once and would be punishable only once. (Parenthetically, under counsel's argument, that is a civil contempt only, he would not be punishable at all because he has purged himself, as they say, by restoring the car.)

"Is one to be rewarded by punishing him less for the greater, more brazen violation of the court's order? Is thus the law to be so ingeniously construed as to make of it an illogical set of rules to punish small violations and condone substantial ones?

"But counsel maintain that there is a difference in an order restraining the doing of an act and an order directing the doing of an act. For illustration, let us assume that John Doe is directed to return his car to the custody of the sheriff and that on Monday he takes the car to Chattanooga and refuses to return it. He has violated the court's order and subjects himself to punishment for that violation. If he returns on Tuesday he may be punished by twenty days in jail and $200 fine. If he takes the car to Chattanooga and refuses each day to return it, counsel's contention would mean that John Doe could be punished only by imprisonment for twenty days and $200 fine. Yet each day the court's order is a command to return the car that day and John Doe refuses. Assume that John Doe goes around the world in the car and finally returns in triumph with the announcement that 'I have obeyed the court's order, I have returned the car, punish me with twenty days in jail and $200 fine—I would have been so punished if I had returned the car immediately and you can punish me no more.'

"Is the court reduced to impotency? Must the court go through the absurd process, of each day issuing another order commanding John Doe to do the same act ordered by the court the previous day—and this act made futile and abortive by not being able to even inform John Doe that he has again passed another order? This perversion of substance for form would tend to make the power of the court to punish for contempt an instrument to destroy respect for the courts rather than to maintain it.

"But whether or not there be charged more than one violation of the court's order, let us look at the second item of each count. It is there charged that on each day the defendant interfered with and impeded the court in the determination of the case. In *Bradley* v. *State*, 111 *Ga.* 168, on page 171, the court said: 'Whoever . . did anything which tended to impede . . the administration of justice committed a contempt.'

"It is charged in each count that defendant each day impeded the court by keeping the child out of the jurisdiction. Each day the court sits. Each day the court could have considered and determined the pending case. Yet each day that was prevented by defendant. Each day defendant kept the child away, defendant interfered with the administration of the court. If the court is impeded by the act of the defendant on Monday, that is a contempt. If the act of defendant impedes the court on Tuesday, that is another contempt just as much as if he spat upon the judge on Monday and again spat upon the judge on Tuesday. If one comes into court and interferes with the administration of the court on each of 238 days, can it be claimed that he has not committed 238 separate contempts? Yet if he stays safely out of the jurisdiction for 238 days, but by his daily act, nevertheless, he daily impedes the court, can the illustration of distance reduce the number of his offenses or merge them into one?

"Counsel for defendant contend that the petition shows that the conduct of the defendant was continuous and that it therefore shows only one contempt.

"If a continuous conduct can constitute only one contempt then defendant could have spirited his child away to Mexico, then, leaving her there but still kept by him, he could return

to this court and say 'Yes, I have taken the child away and am keeping her away and will do so forever—you can punish me only for twenty days and $200 and when I have discharged that punishment I can and will keep her forever away, and there is no further punishment you can impose upon me for so doing and I can henceforth flout the law and the court with impunity.'

"I do not overlook the fact that by a remedial additional order the court can direct him to be held until the child is returned but such is not punitive in nature as a punishment for his contemptuous acts.

"Now, what do the authorities say? The court has read and considered not only the decisions cited by counsel but also other cases.

"In the case of *Graham* v. *Dahlonega Gold Mining Co.*, 71 *Ga.* 296, it was charged that a continued and permanent diversion of the waters of a stream running through complainant's land had been made by means of a ditch opened by defendants. The court said 'Each day that this diversion continues is a fresh trespass.'

"Under this case the act of defendant was continuous just as is contended by counsel in the present case, yet the court there said each day it continues is a fresh trespass. Is a trespass against private property any different from a trespass against the court?

"In the case of *Butler* v. *Mayor, etc. of Thomasville*, 74 *Ga.* 570, there was an action to enjoin the running of a sewer and the continuous pollution of the water of a stream. In that case the court said 'An action may be brought for *each day* the nuisance continues.'

"In the case of *Harris* v. *State*, 193 *Ga.* 109, on page 118 the Supreme Court said 'The courts of this State and the textwriters have recognized that a single act may constitute two or more separate offenses.'

"And in the case of *Tucker* v. *City of Marietta*, 122 *Ga.* 160, the court held: 'Municipal corporation has authority, under the general welfare clause in its charter, to pass an ordinance prohibiting the keeping of intoxicating liquors for the purpose of unlawful sale. A conviction under such an ordinance on one

day is no bar to a conviction for keeping the same liquors for that purpose on a subsequent day.'

"In *Martin* v. *State,* 73 *Ga. App.* 573, defendant was charged in 15 counts with the offense of keeping, maintaining and operating a lottery. On page 578 the court said 'In the instant case where the accusation alleged the commission of the offense of operating a lottery in 15 counts on 15 different days and made the day alleged in each count an essential element to be proved before a conviction could be had on a particular count, the accusation in the form in which it was here drawn did not charge a general offense, for there was no one day common to any two counts but each count charged a particular offense; and where a defendant is convicted on each such count, 15 punishments as for a misdemeanor may be inflicted.'

"See also to the same effect the case of *Smith* v. *State,* 74 *Ga. App.* 777 (3).

"In the case of Solano Aquatic Club *v.* Superior Court of Solano County, 165 Col. 279 (131 Pac. 874), it was held that where petitioner was enjoined from operating its ferry service, the operation on three separate days, *although continuous,* constituted separate contempts which might be separately punished. In its opinion the court said 'The only other proposition which merits consideration is the contention of petitioner that, though its acts were continuous and covered violations upon separate days the court had the power to punish only for a single contempt. Manifestly, if such be the law, the petitioner here could suffer punishment for one act and then be free to operate its ferry not only until final determination on the appeal from the order granting the temporary injunction but until final determination of the appeal from the permanent injunction, should such an injunction follow upon the conclusion of the trial. But such is not the law.'

"Counsel for defendant rely largely upon the cases of State ex rel. Schoenhansen *v.* King (La.), 17 So. 278, and In re Snow, 120 U. S. 274.

"In the King case King, enjoined from operating a saloon, kept his saloon open eight nights. Eight rules for contempt were taken against him, and a penalty of ten days on each rule was imposed against him. On appeal this was reversed and it

was held that he could be punished only once. In its opinion the court said 'It was competent, at any time during the period of the opening of the saloon, for the plaintiff in injunction to call on the court to inflict the penalty for contempt.'

"In the case at bar, how could the court inflict the penalty upon defendant Kenimer? The petition shows that he was not available.

"In the King case the court continued: 'The penalty thus inflicted would doubtless have sufficed, and if the offense was repeated, the penalty might be again inflicted until the evil was checked.'

"I say that how could the penalty be inflicted in the continuity of the act made it only one contempt? Can the court divide it up into several contempts simply because it has imposed punishment for the act to a certain time? If so, then there can be no validity in the contention that so long as it continues it is one and only one act of contempt.

"In the King case the court further says: 'The law means punishment for the offense at the outset to prevent its repetition, and punishment afterwards for its repetition.'

"How can there be any repetition if the continuous act is only one act so long as it continues?

"How can the contemnor be punished at the outset if he is not within the jurisdiction of the court at the outset? How can he be jailed at the outset to prevent a repetition if he has fled the jurisdiction of the court? Is he to be offered a bounty for continuing his contemptuous conduct?

"Isn't it apparent that the Louisiana decision is without logic, and to say the least that it is applicable only when the contemnor is present to be punished at the outset?

"As to the Snow case, there are clearly apparent several clear distinctions from the present case. The most fundamental of which is that in that case (and it is a criminal case and not one for contempt) the court was construing a particular criminal statute which required a continuity of status. In other words, the statute forbade a certain *continuous act,* and in order to be guilty of violating that law the act had to be carried on with some continuousness. In that case the court said 'It is, inherently, a continuous offense; and not an offense consisting

of an isolated act.' The Snow case is, therefore, of no help in deciding the present case.

"Upon reason and authority I am impelled to the conclusion that the motion to quash is without merit.

### "Ground One of the Demurrer.

"By this ground it is contended that the petition shows that defendant has not violated the order of January 28, 1949, for the reason that said order charged Dudley Cook and Durwood Pye with the responsibility of returning the child on the dates of visitation and not the defendant.

"The petition shows that said Cook and Pye as officers of the court were merely charged with the duty of 'seeing that said child was returned.' It directed them to accompany Kenimer at all times during said visits. They were not ordered to return the child but only to see that it was returned. If they were to accompany Kenimer at all times during said visits, who were they to see return the child except Kenimer? To give the allegations of the petition the construction contended for by defendant would be to give a warped and unreasonable construction to the language of the petition. As it was said in the case of *Evans* v. *State*, 69 *Ga. App.* 178 (a contempt case): 'The court is not inclined to give technical objections any more weight than they are entitled to strictissimi juris.'

### "Ground Two of the Demurrer

"This ground contends that the petition shows that the alleged keeping and removal of the child beyond the jurisdiction of this court is not and was not at any time contrary to the order of January 28, 1949. It appears clear to me that the order directed the child's return at a certain time on a certain date. It appears also clear that whether the order directed Kenimer or his attorneys to return the child, Kenimer did not return the child and that he prevented Pye from seeing that the child was returned. To me the petition charges so clear a violation of the order in this respect as to hardly merit discussion.

### "Ground Three of the Demurrer

"This ground (3) has been treated of in the discussion of the motion to quash.

"Ground Four of the Demurrer

"This ground asserts that the petition nowhere alleges that defendant had actual notice of the court order alleged to have been violated.

"If the allegations showing that the defendant sought the order of the court, procured it and then acted upon it, exercised the privileges granted by it and took advantage of it, are not sufficient to show that the defendant had actual knowledge of the order, then I fail to see how any allegation that he had actual knowledge would add anything of substance to the petition. (See *Evans* v. *State*, 69 *Ga. App.* 178, 180).

"Ground Five of the Demurrer

"The contention of ground 5 of the demurrer has been sufficiently covered in the discussion of the motion to quash.

"Ground Six of the Demurrer

"Ground 6 of the demurrer challenges the sufficiency of the petition upon the basis that the contempt alleged is a civil contempt, and that the defendant has purged himself by having surrendered his daughter.

"To say that one can violate the court's order and obstruct the administration of justice and impede the court and then at his will and leisure return and say 'I have decided to obey the court's order by now returning the child and there is nothing you can do about it because I am no longer violating the order' is, I believe, clearly demonstrative of the falsity of this contention. As was said in *Carson* v. *Ennis*, 146 *Ga.* 726, "It is apparent that the relator is not seeking to enforce any order made for the protection or enforcement of any private right, but to punish for alleged continuous and disrespectful conduct towards the court in wilfully disobeying the court's order.'

"See also *Alred* v. *Celanese Corp.* (Ga.), 54 S. E. 2d, 240, for a good discussion of the difference between civil and criminal contempt.

"Ground Seven of the Demurrer

"This ground of the demurrer charges that the petition and prayer seek to induce the court to violate paragraph 9, section 1, article 1 of the Constitution of Georgia, which prohibits excessive fines and the infliction of cruel and unusual punishment.

"The petition shows that it seeks only such punishment as

is authorized by law. The maximum penalty for a criminal contempt is fixed by law.

"There is no merit in this ground of demurrer.

"See *Whitten* v. *State,* 47 *Ga.* 298; *Plain* v. *State,* 60 *Ga.* 284.
"Ground Eight of the Demurrer

"This ground has been treated in the discussion of the motion to quash and is without merit.

"It is, therefore, ordered that the motion to quash and the demurrer of the defendant and each and every ground thereof be and the same are hereby overruled."

One answerable for a contempt transaction may be holden for any contempt of whatever nature which can be legally carved out of his entire offending. Therefore, when the citation for contempt against the defendant Kenimer contained separate counts of offendings on separate days for the separate particular congruous offendings, if the fact that each offending occurred on a number or a great number of consecutive days can not, upon a proper citation and proof thereof, be punished as separate contempts, but the offender is subject to only one punishment of a maximum fine of $200 and 20 days in jail, and such must be accepted by the court as a just punishment for all of such flagrant offendings, the situation would be nothing short of calamitous. See *Martin* v. *State,* 73 *Ga. App.* 573, 578 (37 S. E. 2d, 411). For in a case like the present one where the court has awarded the minor child to one of the separated parents, the mother, and the father wilfully and contemptuously violates the order of the court and takes the child beyond the jurisdiction of the court, and even into a foreign country, the court would be lacking in the needful power to do what the law requires of it, to protect those whom it has legally gathered under its sheltering wings. I, therefore, do not think that the court erred in overruling the motion to quash and the demurrer.

In *Whitten* v. *State,* 47 *Ga.* 298 (2), it was ruled: "In cases where the penalty is left, by the law, to the discretion of the court, with certain fixed limits, this court will not disturb the judgment of the judge of the superior court, so long as he does not exceed the limits prescribed to him by the statute." In the opinion it was said: "Whether the law is unconstitutional, a violation of that article of the Constitution which declares exces-

sive fines shall not be imposed nor cruel and unusual punishments inflicted, is another question. The latter clause was, doubtless, intended to prohibit the barbarities of quartering, hanging in chains, castration, etc. When adopted by the framers of the Constitution of the United States, larceny was generally punished by hanging; forgeries, burglaries, etc., in the same way, for, be it remembered, penitentiaries are of modern origin, and I doubt if it ever entered into the minds of men of that day, that a crime such as this witness makes the defendant guilty of deserved a less penalty than the judge has inflicted. It would be an interference with matters left by the Constitution to the legislative department of the government, for us to undertake to weigh the propriety of this or that penalty fixed by the legislature for specific offenses. So long as they do not provide cruel and unusual punishments, such as disgraced the civilization of former ages, and make one shudder with horror to read of them, as drawing, quartering, burning, etc., the Constitution does not put any limit upon legislative discretion."

The Code, § 24-2615 (5) provides that the superior court has authority "to punish contempt by fines not exceeding $200, and by imprisonment not exceeding 20 days." The punishment inflicted by the judge in the instant case for each offense of contempt was a fine of $50 and imprisonment for 5 days. Thus it will be observed that the punishment for each contempt was restricted to one-fourth of the punishment prescribed by the statute. Following the law as laid down in *Whitten* v. *State*, supra, I think that for us to undertake to weigh the propriety of this or that penalty fixed by the legislature for the specific offense provided for in the Code, § 24-2615 (5) and to reverse this case would be an interference with matters left by the Constitution to the legislative department of the government. I think that so long as the legislature does not prescribe cruel and unusual punishment such as disgraced the civilizations of former ages and make one shudder with horror to read of them, as drawing, quartering, burning, etc., the Constitution does not put any kind of limitation upon the legislative discretion. *Whitten* v. *State*, supra; *Plain* v. *State*, 60 *Ga.* 284; *Brown* v. *State*, 149 *Ga.* 817 (102 S. E. 449).

The several penalties imposed being all within the statutory

powers of the court to inflict for such offenses, I do not think that this court is concerned with the aggregate duration of the imprisonment or the amount of the fine. Indeed, under the Constitution and the statutes of this State I do not think that this court has the right to interfere with the sentences imposed in this case. *McCullough* v. *State*, 11 *Ga. App.* 612, 618 (6) (76 S. E. 393). To do so would, I think, put the court in a position of unenviable solitude among the courts of the Nation.

The authorities above mentioned are in accord with those of other jurisdictions, some of which are now referred to. In Hart *v.* Commonwealth, 131 Va. 726 (7) (109 S. E. 582), it was held: "It has been uniformly held by the Supreme Court of Appeals that the provisions in section 9 of the Constitution [forbidding cruel and unusual punishments], which have remained the same as they were originally adopted in the Virginia Bill of Rights of 1776, must be construed to impose no limitation upon the legislative right to determine and prescribe by statute the quantum of punishments deemed adequate by the legislature; that the only limitation so imposed is upon the mode of punishments, such punishments only being prohibited by such constitutional provision as were regarded as cruel and unusual when such provision of the Constitution was adopted in 1776, namely, such bodily punishments as involve torture or lingering death—such as are inhumane and barbarous; as, for example, punishment by the rack, by drawing and quartering, leaving the body hung in chains, or on the gibbet, exposed to public view."

In Raymond *v.* United States, 25 Appeal Cases D. C. 555, 560, it was said: "To be given the full extent of the law, as the expression is, in any particular case, may be an act of severity, as indeed it would seem to have been in the present case; but this is not cruel and unusual punishment such as is prohibited by the fundamental law. Not so much the extent as the nature of the punishment it is that makes it cruel and unusual; although in many cases it may be difficult to distinguish severity from cruelty."

In Scala *v.* United States, 54 F. (2d) 608, 611, it was said: "If appellants were properly convicted of the three separate offenses, there can be no merit in the contention that upon each conviction the maximum penalty of imprisonment was imposed.

If the several penalties imposed were within the statutory power of the court to inflict for the several offenses, the Court of Appeals is not concerned with the aggregate duration of the imprisonment or amount of the fines. [Citing] Such penalties, whatever the aggregate, do not transgress the constitutional inhibition upon 'cruel and unusual punishment.' See Badders v. United States, 240 U..S. 391, 36 S. Ct. 367, 60 L. Ed. 706; Ebeling v. Morgan, 237 U. S. 625, 35 S. Ct. 710, 59 L. Ed. 1151; Howard v. Fleming, 191 U. S. 126, 24 S. Ct. 49, 48 L. Ed. 121; and In re Kemmler, 136 U. S. 436, 10 S. Ct. 930, 34 L. Ed. 519, where the question is discussed at some length." This decision by the U. S. Circuit Court of Appeals, Seventh Circuit, was examined by the Supreme Court of the United States and certiorari was denied. 285 U. S. 554 (52 Sup. Ct. 41, 76 L. ed. 943).

This court held in *Rogers* v. *State*, 11 *Ga. App.* 814 (2) (76 S. E. 366), that "It is well settled, by repeated decisions of the Supreme Court and of this court, that where the sentence imposed by the trial court is within the limit fixed by the statute, it will not be set aside and a new trial granted on the ground that the sentence imposed is excessive and the punishment cruel and unusual, and, therefore, in violation of the Constitution of this State, article 1, section 1, paragraph 9 (Civil Code, § 6365)."

For the reasons above stated I dissent from the judgment of reversal.