72278—72303. CAREY CANADA, INC. v. HINELY et al.
(352 SE2d 398)

POPE, Judge.

Defendant Carey Canada, Inc. brings these 26 appeals[1] from an order entered in each case imposing sanctions pursuant to OCGA § 9-

---

[1] 72279. Carey Canada, Inc. v. Parrish; 72280. Carey Canada, Inc. v. Youmans et al.; 72281. Carey Canada, Inc. v. Watson; 72282. Carey Canada, Inc. v. Bishop; 72283. Carey Canada, Inc. v. Lewis; 72284. Carey Canada, Inc. v. Sasser; 72285. Carey Canada, Inc. v. Caines et al.; 72286. Carey Canada, Inc. v. Mixon; 72287. Carey Canada, Inc. v. Blackston; 72288. Carey Canada, Inc. v. Clifton; 72289. Carey Canada, Inc. v. Bales; 72290. Carey Canada, Inc. v. Smith; 72291. Carey Canada, Inc. v. Murray et al.; 72292. Carey Canada, Inc. v. Pitts; 72293. Carey Canada, Inc. v. Lee; 72294. Carey Canada, Inc. v. Raiford; 72295. Carey Canada, Inc. v. Bevill; 72296. Carey Canada, Inc. v. LeLoach; 72297. Carey Canada, Inc. v. Brigdon; 72298. Carey Canada, Inc. v. Lair et al.; 72299. Carey Canada, Inc. v. Lewis; 72300. Carey Canada, Inc. v. Deal; 72301. Carey Canada, Inc. v. Moore; 72302. Carey Canada, Inc. v. Shinall; 72303. Carey Canada, Inc. v. Helmey.

11-37 (b). As the issues raised in these appeals are the same, we have consolidated them for the purpose of review.

On May 30, 1980 plaintiffs brought the first of these 26 actions for asbestos products liability against defendant and others in the State Court of Chatham County. These cases were consolidated for the purpose of discovery, and special discovery procedures were established by order dated July 23, 1982. The trial court directed that because of the special nature of asbestos litigation, the July 23 order "shall be deemed to be an order compelling discovery." On December 21, 1982 plaintiffs sought the production of certain company records or documents from defendant. On January 11, 1983 defendant objected to this request on a variety of grounds, including the constraints of the Province of Quebec's Business Concerns Records Act, Que. Rev. Stat. c. 278 (1964). This act provides that business concerns in Quebec (such as defendant) may not send business-related documents outside the province, subject to certain exceptions. On February 8, 1983 plaintiffs filed a motion to compel the production of documents; this motion was also opposed by defendant on the basis of the Business Concerns Records Act. On April 8, 1983 plaintiffs filed a motion for letters rogatory (see OCGA § 9-11-28 (b)) which, as counsel for all parties agreed, could be utilized to legally circumvent the obstacles posed by the Business Concerns Records Act. On August 5, 1983 the trial court ordered its clerk to issue letters rogatory to the appropriate authority in Canada. This order was objected to by defendant and, following a hearing on the matter, appears to have been abandoned. On November 17, 1983, after notice and hearing, the trial court overruled all of defendant's objections to production of documents and directed defendant to produce said documents no later than December 9, 1983. Defendant then instituted a variety of legal maneuvers in an unsuccessful attempt to obtain relief from or interlocutory review of the November 17 order. On October 3, 1984 plaintiffs moved for the imposition of sanctions pursuant to OCGA § 9-11-37 (b). A hearing on this motion was held on October 22, 1984 and on December 31, 1984 the trial court entered the order here appealed.

1. Defendant's fifteenth enumeration cites as error the entry of the December 31, 1984 order because the judge who made the order, Hon. James W. Head, had taken the oath of office as judge of the Chatham County Superior Court on December 27, 1984. The record discloses that Judge Head was elected as judge of the superior court for a term beginning January 1, 1985 and that he resigned as judge of the state court effective on that date. We are aware of no constitutional or statutory bar to Judge Head's continuing to serve as judge of the state court until the effective date of his resignation from that office, notwithstanding his having taken the oath of office of judge of the superior court a few days before his term of office was to begin.

See Ga. Const. 1983, Art. VI, Sec. VII, Par. I; OCGA § 15-6-6. It follows that Judge Head was authorized to enter the subject order on December 31, 1984.

2. Defendant's first and eighth enumerations attack plaintiff's request for production of documents as "too broad." The trial court found that the documents sought by plaintiffs were "relevant and necessary to the discovery process calculated to lead to the discovery of admissible evidence in the litigation which is complicated, which involves multiple parties with various business relationships in mining, producing, manufacturing, and distributing products containing asbestos."

Discovery is "an integral and necessary element of our civil practice. Wide latitude is given to make complete discovery possible. The broad purpose of the discovery rules, under the Civil Practice Act, is to enable the parties to prepare for trial so that each party will know the issues and be fully prepared on the facts. Discovery is specifically designed to fulfill a two-fold purpose: issue formulation and factual revelation. The use of the discovery process has been held to be broadly construed. [Cits.]" *Travis Meat &c. Co. v. Ashworth*, 127 Ga. App. 284, 285-86 (193 SE2d 166) (1972). "There is no territorial limitation in our discovery statutes as to location of witnesses, documents, assets, etc. [Cits.]" *Thrift v. Vi-Vin Prods.*, 134 Ga. App. 717, 718 (215 SE2d 709) (1975). "Discovery is available under the CPA to any party in any court regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action; it is not a ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence. [Cit.]" *Morton v. Gardner*, 242 Ga. 852, 857 (252 SE2d 413) (1979).

"Good cause for the issuance of a protective order designed to frustrate discovery must be clearly demonstrated. [OCGA § 9-11-26 (c).] Such cause necessarily is not established by stereotyped or conclusional statements, bereft of facts. The trial court does have a wide discretion in the entering of orders permitting or preventing the use of . . . discovery which [is] oppressive, unreasonable, unduly burdensome or expensive, harassing, harsh, insulting, annoying, embarrassing, incriminating or directed to wholly irrelevant and immaterial or privileged matters, or as to matter concerning which full information is already at hand. [Cit.]" *Young v. Jones*, 149 Ga. App. 819, 824 (256 SE2d 58) (1979). See *Sorrells v. Cole*, 111 Ga. App. 136 (2a) (141 SE2d 193) (1965). "It is contemplated that the trial [court] will exercise a sound and legal discretion in the grant or denial of protective orders. Such are intended to be protective — not prohibitive — and, until such time as the court is satisfied by substantial evidence that bad faith or harassment motivates the [discoveror's] action, the court

should not intervene to limit the scope of pretrial discovery." *Travis Meat &c. Co. v. Ashworth*, supra at 288-89.

We will not burden this opinion with a lengthy factual analysis of plaintiffs' request for production. In view of the standards set forth above, suffice it to say that we have reviewed said request in light of defendant's objections thereto and find no abuse of discretion in the trial court's overruling same. Cf. *E. H. Siler Realty &c. v. Sanderlin*, 158 Ga. App. 796 (2) (282 SE2d 381) (1981), wherein a request for "all documents" intended for use as evidence at the trial of the case was found to be outside the permissible scope of discovery, but a request for "all documents" relied upon to demonstrate and support facts relevant to the litigation would be within the permissible scope discovery; *Bullard v. Ewing*, 158 Ga. App. 287 (279 SE2d 737) (1981), wherein a request for the name, address and telephone number of every individual, corporation or company for whom the defendant performed construction or building repair work since 1975 was found to be unreasonably broad and too general. See generally *Vaughn & Co. v. Saul*, 143 Ga. App. 74 (4) (237 SE2d 622) (1977).

3. Defendant's second and fourth enumerations challenge the imposition of sanctions adjudicating liability in this case as not relating to the issues made by the request for production. Pursuant to OCGA § 9-11-37 (b) (2) (A, B, C) the trial court imposed the following sanctions: "1. The following facts, matters and conditions are established as true for purposes of [these lawsuits]: (a) That Defendant Carey Canada, Inc. did sell asbestos containing products; (b) That Plaintiffs were exposed to the asbestos containing products sold by Defendant Carey Canada, Inc.; (c) That Plaintiffs have suffered personal injury and/or death as a result of being exposed to the asbestos containing products sold by Defendant Carey Canada, Inc.; (d) That the Defendant Carey Canada, Inc., failed to warn the Plaintiffs and each of them of the dangerous characteristics of their asbestos containing products and is, therefore, guilty of negligence as a matter of law; (e) That the Defendant Carey Canada, Inc. knowingly suppressed and covered up knowledge of the dangers of asbestos in order to maximize corporate profits in complete and utter disregard of the adverse health effects upon persons exposed to asbestos products manufactured and sold by Defendant Carey Canada, Inc.; 2. That Defendant Carey Canada, Inc. is prohibited from submitting or offering any evidence or testimony to contradict any facts alleged by Plaintiffs or to support any defense alleged by Defendant Carey Canada on any issues of liability."

The question here is not whether this court as an original matter would have applied these sanctions; it is whether the trial court abused its discretion in so doing. *Insurance Corp. of Ire. v. Compagnie Des Bauxites de Guinea*, 456 U. S. 694, 707 (102 SC 2099, 72 LE2d 492) (1982); see *Dean v. Gainesville Stone Co.*, 120 Ga. App.

315 (170 SE2d 348) (1969). OCGA § 9-11-37 (b) (2) "contains two standards — one general and one specific — that limit a [trial] court's discretion. First, any sanction must be 'just'; second, the sanction must be specifically related to the particular 'claim' which was at issue in the order to provide discovery." *Ins. Corp. of Ire.*, supra at 707. See Agnor, Use of Discovery Under the Ga. Civil Practice Act (3rd ed.), § 12-6.

As to the "justice" of the sanctions imposed, the trial court in its order noted that plaintiffs filed their request for production of documents on December 21, 1982. The court found that "[e]very effort by this Court to effect discovery without any order to compel was made by this Court only to meet with a direct refusal to discover. Following the futile efforts of this Court to effect discovery voluntarily by said Defendant Carey Canada this Court ordered the production of the documents in its Order of November 16, 1983. Defendant Carey Canada to date [December 31, 1984] has failed to produce the documents ordered by this Court. . . . As to the production of documents, in every hearing held by this Court prior to the order compelling discovery defendant steadfastly refused to produce *any documents requested* under the claim that the documents were (1) in Canada and (2) the Canadian laws prohibited disclosure of such records. An interesting event occurred in Chatham County in the Halls of Justice in the Federal District Court, Southern District, Savannah Division *prior to this Court issuing its orders to compel on November 16, 1983.* A disclosure was made to the Federal Judge presiding in the asbestos cases pending for trial in that forum, that Defendant Carey Canada possessed relevant documents to the asbestos litigation in the State of Florida, U.S.A. The Defendant Carey Canada did not disclose this information to this Court nor has the Defendant to this date disclosed to this Court that such documents exist.

"[T]his Court after notice and hearing to all parties heard Plaintiffs' Motion for Sanctions against said Defendant Carey Canada for failing to produce the documents requested. The hearing of the sanctions was held after all decisions were rendered by the Appellate Courts of this State. Based upon the record of these asbestosis cases, based upon the efforts of the presiding Judge in these cases to effectuate meaningful discovery without orders compelling discovery, based upon Defendant Carey Canada's refusal to [provide] discovery until ordered to discover by this Court not only as to the production of documents but also as to the other methods of discovery initiated by Plaintiffs, the Court can arrive at no other finding but that the Defendant Carey Canada, willfully and intentionally refused to discover prior to and subsequent to the order of this Court compelling discovery. The Defendant has failed to comply with the Order of this Court to produce the documents ordered to be produced. The refusal

to produce the documents by Defendant Carey Canada was and is a continuing willful and intentional evasion of the discovery process as well as the orders of this Court. Defendant has totally abused the discovery process provided under the Laws of Georgia." These factors amply demonstrate the "justice" of the trial court's order. Accord *Ins. Corp. of Ire.*, supra at 707-08. See *Swindell v. Swindell*, 233 Ga. 854 (3) (213 SE2d 697) (1975); *Rubin v. Cindyreal*, 171 Ga. App. 45 (318 SE2d 520) (1984).

As to the second standard — that the sanction must be specifically related to the particular claim which was at issue in the order to provide discovery — only two of the sanctions imposed give us pause, numbers 1 (c) and 2. The remaining sanctions are clearly related to the claims at issue. As to sanction 1 (c) — that plaintiffs have suffered personal injury and/or death as a result of being exposed to the asbestos containing products sold by defendant — plaintiffs concede that this finding does not correlate with any of documents requested. This sanction therefore does not support " 'the presumption that the refusal to produce evidence . . . was but an admission of the want of merit in the asserted defense.' *Hammond Packing* [*Co. v. Ark.*, 212 U. S. 322, 351 (29 SC 370, 53 LE 530) (1909)]." *Ins. Corp. of Ire.*, supra at 709. It follows that sanction number 2 — prohibiting defendant from contesting any issue of liability — is likewise beyond the scope of the discovery requested. Sanctions 1 (a), (b), (d) and (e) are affirmed; sanction 1 (c) is reversed. To the extent sanction 2 relates to sanctions 1 (a), (b), (d) and (e), it is affirmed; to the extent it purports to go further, it is reversed.

4. Defendant's third and fifth enumerations of error assert that the trial court exceeded its powers by imposing a fine of $500 per day for failure to comply with the order compelling production of documents. The trial court imposed the following fine for contempt of court: "Under O.C.G.A. 9-11-37 (b) (2) (D) in addition to the other sanctions issued herein the Court finds the said Defendant Carey Canada in willful contempt of this Court for each day it has failed to comply with the order of this Court requiring it to produce records to the Plaintiffs, *which Defendant knowingly had in its control and custody in the United States of America.* Under [O.C.G.A. 15-7-4 (5)] the Court fines said Defendant Carey Canada the sum of $500.00 for each day commencing and including December 9, 1983, and each day thereafter as a continuing contempt *to the date of this order.* And upon failure of said Defendant Carey Canada to comply with said Order of November 16, 1983, upon notice and hearing the Court shall consider further fines. The Defendant, Carey Canada, may produce said records and purge itself of further fines for non compliance with the orders of this Court."

OCGA § 15-7-4 (5) limits the jurisdiction of state courts to "[t]he

punishment of contempts by fine not exceeding $500.00 or by imprisonment not exceeding 20 days, or both. . . ." Defendant contends that the citation for contempt in this case is criminal in nature, rather than civil, in that the record shows but one violation of the discovery order, regardless of the number of days the violation continues. Defendant thus asserts that the trial court's authority to punish therefor is limited to a one-time imposition of the sanctions provided in the statute. In other words, the thrust of defendant's argument is that the trial court exceeded its jurisdiction in treating each day of defendant's violation of the order compelling discovery as a separate contempt for the purpose of imposing sanctions.

"Proceedings for contempt are of two classes, punitive [criminal] and remedial [civil]. A proceeding of the former class is intended to punish the offender for a past act of omission or commission which has disturbed the regular proceedings of the court, interfered with its proper functioning, resisted its authority, or reflected contempt upon it, and the authorized penalty in such a case is that prescribed by [statute]; the latter or remedial proceeding is instituted to preserve and enforce the rights of private parties, and may be resorted to as a means of compelling obedience to such court orders or duties as the offenders may wilfully or fraudulently fail or refuse to perform; and in such cases of continuing contempt it is within the power of competent courts to imprison the refractory party until he shall have obeyed the precept. [Cits.]" *Hancock v. Kennedy*, 22 Ga. App. 144 (1) (95 SE 735) (1918); *Davis v. Davis*, 138 Ga. 8 (1) (74 SE 830) (1912). As a practical matter a corporation may not be imprisoned, but it may be fined. *State v. Shepherd Constr. Co.*, 248 Ga. 1, 5 (281 SE2d 151), cert. den., 454 U. S. 1055 (1981). It follows that where imprisonment cannot be utilized, a per diem fine may be imposed, within statutory limits, until the recalcitrant party performs the decree of the court. 17 CJS, Contempt, § 98. See *Kenimer v. State of Ga.*, 81 Ga. App. 437 (6) (59 SE2d 296) (1950). See also *In re Pruitt*, 249 Ga. 190, 193 (288 SE2d 208) (1982). Thus, whether or not a fine or imprisonment is imposed is not a distinguishing test for determining to which class a contempt proceeding belongs. 17 CJS, Contempt, § 5 (2).

"In all contempts, it is true, there is an element of criminality, involving as they do the wilful disobedience of orders or decrees made in the administration of justice, but a contempt proceeding is not always a criminal proceeding." *Drakeford v. Adams*, 98 Ga. 722, 724 (25 SE 833) (1896). "Generally the classification as to 'civil' or 'criminal' contempt is one depending on the facts of each case." *City of Macon v. Massey*, 214 Ga. 589, 590 (106 SE2d 23) (1958). " 'A major factor in determining whether a contempt is civil or criminal is the purpose for which the power is exercised.' " *Ensley v. Ensley*, 239 Ga. 860, 861 (238 SE2d 920) (1977). "[A] contempt is considered civil when the

punishment is wholly remedial, serves only the purposes of complainant, and is not intended chiefly as a deterrent to offenses against the public. The polar concepts are 'punitive' versus 'remedial.'" 17 CJS 13, Contempt, § 5 (2).

Applying the foregoing legal precepts to the facts in this case, we are persuaded that the contempt charged and adjudicated was not criminal, but civil. In levying the fine the trial court was not acting sua sponte or at the instance of the government through a prosecuting officer; rather, it lent a helping hand to a civil litigant, a suppliant for aid. Compelling discovery to an obstructed litigant, not vindication of the public justice, was the apparent purpose of the fine, and of the fine in all its parts. What is plain from the trial court's contempt order is the fact that the assessment was made in a genuine endeavor to coerce defendant into providing the discovery ordered without any further obstruction and delay. See, e.g., *Fox v. Capital Co.*, 299 U. S. 105, 108-09 (57 SC 57, 81 LE 67) (1936). Moreover, the trial court treated the violation of the order compelling discovery as a continuing contempt which defendant had the power to rectify, rather than a single, completed act of contempt. Compare *Warner v. Martin*, 124 Ga. 387 (4) (52 SE 446, 4 Am. Ann. Cas. 180) (1905). Under these circumstances, OCGA § 15-7-4 (5) provides no basis for reversal of the judgment entered. Cf. *Hancock v. Kennedy*, supra at (2).

5. The fine imposed by the trial court totals $193,500. Defendant's sixth enumeration of error asserts that the punishment imposed constitutes cruel and unusual punishment under federal and state constitutional provisions.[2] The action of a trial court in punishing a party for contempt will not be controlled absent an abuse of discretion. *Howard v. Durand*, 36 Ga. 346 (2) (91 Am. Dec. 767) (1867). "The punishment can not be cruel, unusual, or excessive, but must be reasonable in view of the particular facts and circumstances." *Brooks v. Sturdivant*, 177 Ga. 514, 516 (170 SE 369) (1933). Where the purpose of a fine is to compel compliance with the court's order, the court must consider "the character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired. It is a corollary of the above principles that a court which has returned a conviction for contempt must, in fixing the amount of a fine to be imposed as a . . . means of securing future compliance, consider the amount of defendant's financial resources and the consequent seriousness of the burden to that particular defendant." *United States v. United Mine Workers of America*, 330 U. S. 258, 304 (67 SC 677, 91

---

[2] Defendant's argument in these appeals makes no distinction between the state and federal constitutional provisions cited. Accordingly, for our purposes here, we need not address any substantive differences (if, indeed, there are any) between them.

LE 884) (1947).

In light of the foregoing principles, we think the record clearly warrants the fine imposed. According to its own advertisement, defendant is an international corporation which is "one of the world's largest producers of asbestos fibre." It is doubtful that a nominal fine would prove effective in ending defendant's continuing contumacy, particularly in light of the history of this case which provides a factual predicate for the trial court's finding of "willful" contempt. Moreover, there is no evidence that defendant is unable to pay the fine or that the assessment is unduly burdensome. We agree with defendant that the fine imposed is substantial, but we find no basis in the record for concluding that this punishment constitutes cruel and unusual punishment.

The holdings in *Kenimer v. State of Ga.*, 83 Ga. App. 264 (63 SE2d 280) (1951), and its prior appearance, 81 Ga. App. 437 (7), supra, do not require a result different from that reached here. Those cases, involving *criminal* contempt, are limited to the facts therein stated. *Curtis v. State*, 102 Ga. App. 790, 799-800 (118 SE2d 264) (1960). Moreover, " 'where the [punishment] imposed by the trial court is within the limit fixed by the statute, it will not be set aside . . . on the ground that the sentence imposed is excessive and the punishment cruel and unusual, and, therefore, in violation of the Constitution of this State. . . .' " Id. at 800. As is apparent from our holding in Division 4, supra, the fine imposed in this case is within statutory limits, and, thus, is not violative of state constitutional provisions.

Nor are we persuaded by defendant's contention that the fine here is disproportionate to the offense. Defendant argues that as a Canadian corporation subject to the laws of Canada, it justifiably declined to produce the requested documents because to do so would place it in violation of Canadian law. However, the fine imposed here related solely to documents located in the United States and thus not subject to Canadian law. The holding in *Societe Internationale &c. v. Rogers*, 357 U. S. 197 (78 SC 1087, 2 LE2d 1255) (1958), is thus inapposite to the case at bar.

6. Defendant's seventh enumeration of error asserts that OCGA § 15-7-4 (5) is unconstitutional as authorizing cruel and unusual punishment. Appellate jurisdiction of questions concerning the constitutionality of state statutes rests exclusively in the Supreme Court. These cases were originally filed in the Supreme Court but were transferred to this court by order finding that this enumeration of error and enumeration of error 14 "deal with the trial court's application of the statutes involved, not their constitutionality." This court thus has jurisdiction over the question raised by this enumeration. However, in light of our holding in Division 5, supra, this enumera-

tion of error provides no basis for reversal.

7. Enumerations of error 9, 10 and 11 are argued together, defendant contending that the order of contempt and sanctions violates due process, is an abuse of discretion, is contrary to law and violates international law. Responding seriatim to each issue raised here, we first find no factual predicate of record which supports defendant's due process argument. See generally *Schiselman v. Trust Co. Bank*, 246 Ga. 274 (2) (271 SE2d 183) (1980). As noted in Division 5, supra, the trial court's order did not punish defendant for its refusal to violate the Quebec Business Concerns Records Act. We find entirely without merit defendant's assertions that the trial court abused its discretion in these cases and that the judgment is contrary to law. See *Crute v. Crute*, 86 Ga. App. 96 (70 SE2d 727) (1952). See generally *Warehouse Carpet Sales &c. v. S.C.J. Assoc.*, 170 Ga. App. 352 (2) (317 SE2d 328) (1984); *Carter v. Data Gen. Corp.*, 162 Ga. App. 379 (3) (291 SE2d 99) (1982). Finally, we find no issue of international law presented by the facts of this case. In any event, defendant's assertion that it had no intent to violate the discovery order was not binding on the trial court. See *Schiselman v. Trust Co. Bank*, 246 Ga. 274 (1), supra.

8. Defendant's sixteenth enumeration of error asserts that the trial court improperly considered and relied upon "pleadings and proceedings in other cases in other courts which were not properly made a part of the record in this case." However, defendant's brief contains neither argument nor citation of authority in support of this enumeration. Therefore, under Court of Appeals Rule 15 (c) (2) this enumeration of error is deemed abandoned. Plaintiff's attempt to resurrect this enumeration by addressing its merits in a supplemental brief is of no avail. *Wade v. Thomasville Orthopedic Clinic*, 167 Ga. App. 278 (3) (306 SE2d 366) (1983).

9. We have reviewed defendant's remaining enumerations of error and, in light of our holdings in the foregoing divisions of this opinion, find them to be entirely without merit.

*Judgments affirmed in part; reversed in part. McMurray, P. J., Birdsong, P. J., Sognier and Benham, JJ., concur. Banke, C. J., Deen, P. J., Carley and Beasley, JJ., dissent.*

CARLEY, Judge, concurring in part and dissenting in part.

I concur fully in all divisions of the majority opinion with the exception of Divisions 4, 5 and 6. As to Division 4, I must respectfully dissent to the majority's holding that the trial court's order is an adjudication of appellant's civil contempt.

"Attachments for contempt are either civil or criminal, *or both.*" (Emphasis supplied.) *Beavers v. Beavers*, 148 Ga. 506 (2) (97 SE 65) (1918). "An injured party is frequently more interested in obtaining a

contempt order as a *remedy* for himself or herself (civil contempt) than in obtaining *punishment* of the defendant for violating the court's order (criminal contempt). [Cit.] The court on the other hand has the responsibility of seeing that its orders in other cases as well as the pending cases are obeyed. Hence a court may find that a contempt proceeding originated and pursued by a party seeking civil contempt should be treated as one for criminal contempt." (Emphasis supplied.) *Schiselman v. Trust Co. Bank*, 246 Ga. 274, 277 (271 SE2d 183) (1980). Criminal contempt is retrospective. It authorizes unconditional punishment based upon a past violation of a court's prior order and vindicates the authority of the court itself. Civil contempt is prospective. It authorizes conditional punishment as a means to coerce future compliance with a court's prior order and seeks to provide a party with the relief to which he is otherwise entitled under that prior order. "Criminal contempt with unconditional [punishment] may be used to preserve the court's authority and to punish disobedience of its orders. [Cit.] Civil contempt, on the other hand, is conditional punishment which coerces the contemnor to comply with the court order. [Cit.]" *Hopkins v. Hopkins*, 244 Ga. 66, 67 (1) (257 SE2d 900) (1979).

Although the contempt order in the instant cases arises in the context of a civil action and as the result of appellees' motion for sanctions, it is clear that, insofar as appellant was adjudged to have been in "continuing contempt *to the date of [the] order*," the trial court's intent was to *punish* appellant. (Emphasis supplied.) The order recites that appellant was being found in contempt for its *past* failure "to comply with the order of [the] Court requiring it to produce records to the [appellees]. . . ." The order imposes an unconditional penalty for this prior failure to comply with the trial court's order. The only remedial aspect of the trial court's contempt order ostensibly designed to coerce appellant into future compliance with the prior discovery order is the recitation that, "upon failure of [appellant] to comply with said Order of November 16, 1983, upon notice and hearing the Court shall consider *further* fines. [Appellant] may produce said records and purge itself of *further* fines for non compliance with the orders of this Court." (Emphasis supplied.) Accordingly, I believe that the $500 per day fine "to the date of [the] order" was clearly punishment for appellant's past violation of the trial court's discovery order and was, therefore, an adjudication of criminal, not civil, contempt.

"The power of the courts of this State to punish for contempt is limited by law, and any sentence exceeding the limitation thus imposed is void." *Drane v. Childers*, 18 Ga. App. 282 (1) (89 SE 304) (1916). OCGA § 15-7-4 (5) provides that courts have jurisdiction over "[t]he punishment of contempts by fine not exceeding $500.00. . . ."

This statutory limitation does not apply when the adjudication of contempt is civil and remedial, for such contempt is potentially continuous until such undeterminable time as the contemnor purges himself by future compliance with the trial court's prior order. See *Cobb v. Black*, 34 Ga. 162, 166 (2) (1865). This concept of a "continuing contempt" exception to the statutory limitation of OCGA § 15-7-4 (5) does not, however, apply to past criminal contempt evidenced by the contemnor's prior continuing failure to obey a trial court's order. *Cobb v. Black*, supra at 162 (2). "In the case now under review, the contempt for which the fines were imposed had been committed by doing an act or acts which the judge decided to be in violation of [its prior discovery] order, and therefore came directly within the scope of the legislative provision limiting the power of . . . courts in imposing fines for contempt." *Warner v. Martin*, 124 Ga. 387, 393 (52 SE 446) (1905). "The object [of the fines], in this case, [was] to punish for an *act done*, in contempt of the Court, [not] to compel the doing of an act necessary to the administration of justice." (Emphasis in original.) *Cobb v. Black*, supra at 167. Accordingly, I would find that any fines imposed upon appellant in excess of $500 for its past criminal contempt in refusing to comply with the trial court's discovery order was unauthorized under OCGA § 15-7-4 (5).

For the above-stated reasons, it is my opinion that the trial court adjudicated appellant in criminal contempt and erroneously imposed a fine in excess of $500. Therefore, I would affirm the trial court's contempt order only upon condition that the fines in excess of $500 be stricken. Accordingly, I must respectfully dissent to Division 4 of the majority opinion which affirms in full the contempt order.

I am authorized to state that Chief Judge Banke, Presiding Judge Deen and Judge Beasley join in this dissent.

DECIDED NOVEMBER 20, 1986 —
REHEARING DENIED DECEMBER 19, 1986 —

*Darlene Y. Ross, E. Freeman Leverett, John D. Jones*, for appellant.

*Richard A. Middleton, Eugene C. Brooks IV*, for appellees.